### YAZOO CITY TRANSPORTATION CO. *v.* DANIEL SMITH.

1. MASTER AND SERVANT. *Knowledge. Cold.*

    Knowledge of atmospheric conditions and the effect of cold on his own body will be imputed to a servant as well as to this master.

2. SAME. *Incidental dangers. Unprecedented cold.*

    Injuries resulting to a servant from exposure to cold impose no liability on the master when the cold was unprecedented, and exposure to cold not of that character was incidental to the nature of the servant's employment.

3. SAME.

    The act of 1898, p. 85, relating to the liability of corporations to employes for damages resulting from the use of defective appliances, ways, etc., has no application where the injury resulted from unprecedented weather.

FROM the circuit court of Warren county.

HON. PATRICK HENRY, Judge.

Smith, the appellee, was the plaintiff, and the transportation company, a corporation, the appellant, was the defendant in the court below. The suit was for personal injuries. The plaintiff was a deck hand on a steamboat of defendant's, navigating the Yazoo river. Sunday, February 12, 1899, was the

coldest day ever known in Mississippi.    On said day the steam-
boat on which plaintiff was a laborer was on a trip down the
river, and arrived at a landing known as Silver City, where
eighteen bales.of cotton had been placed on the river bank to be
loaded on the boat.    The captain of the boat ordered the deck
hands, including plaintiff, to bring the cotton onto the boat.
This they did without protest, and they were not compelled to do
so by duress.    The plaintiff's fingers were frostbitten or frozen
because of the exposure incident to loading the cotton.    None of
his co-laborers were frostbitten or frozen.    In the court below
the plaintiff recovered a verdict and judgment against the de-
fendant for $650 and costs, and the defendant appealed to the
supreme court.

*Miller, Smith & Hirsh,* for appellants.

The court erred in refusing the peremptory instruction asked
for by the defendant.    Under no circumstances can it be said
that where the danger is plain and obvious and arises from
natural causes, as in the present case, that the master can be
held liable, because in such case if the servant continues in the
employ of the master he is guilty of contributry negligence.
The testimony shows beyond doubt that the injury received by
plaintiff was that of being frostbitten by being exposed to ex-
tremely cold weather—in other words, one of the laws of
nature—and it was as obvious to plaintiff as it was to the cap-
tain or any other person.    In the case of *Worles* v. *Railway
Co.*, 25 S. E., 647, the supreme court of Georgia held that,
" where one enters the service of another, he assumes the usual
and ordinary risk incident to the employment about which he
is engaged.    In discharging the duties which he has undertaken
to perform, he is bound to take notice of the ordinary and fa-
miliar laws of nature applicable to the subject of his employ-
ment, and if he fail to do this, and, in consequence, is injured,
the injury is attributable to the risks of the employment, and
the master is not liable."    In the case of *Missouri, etc., Ry.*

*Co.* v. *Spellman*, 34 S. W., 299, the court said: "It is the general principle that a servant assumes all the risks ordinarily incident to the business, and where he has equal facilities with the master for ascertaining the danger incident to the labor in which he is engaged, he takes the risk upon himself. The work required of appellee was not of such a character as to require experience to know the danger attendant upon it." *Texas, etc., Ry. Co.* v. *French*, 23 S. W., 642; *Johnson* v. *Oaks*, 70 Fed., 566. These principles are not changed by the act of 1898, on the subject of the liability of corporations to their employes. *Railway Co.* v. *Holborn*, 4 So. Rep. (Ala.), 146; *Fay* v. *Chicago, etc., Ry. Co.*, 75 N. W., 15; McKinley on Fellow Servants, 243.

*Catchings & Catchings*, for appellee.

Our theory of the case is based on the fundamental and well settled doctrine that the employe assumes only those risks which are necessarily incident to the service he enters, and which he is therefore presumed to have had in contemplation at the time of his employment. It is not to be supposed that any one will enter an ordinary occupation, receiving merely ordinary compensation, and yet be willing to assume extraordinary hazards not properly connected with his employment. He must be acquainted with the dangers of his service in order that he may determine for himself whether he will undertake it at all, and what wages he will demand to compensate him for the extra hazard. If he is ordered by his employer into a situation of unusual danger, so that he must confront a peril not incident to his ordinary service, and is injured, without fault on his part, he is entitled to damages to compensate him for his misfortune. There is only one qualification to this rule, and that arises where the danger to be faced is so glaring and manifest and imminent that no prudent man would incur it. This qualification does not constitute a real exception to the rule, for the reason that the danger must be so apparent as to

justify the assumption that it is seen and understood by the
servant as well as by the master, and being so appreciated and
disregarded, the employe becomes guilty of contributory neg-
ligence, or at least is held to have assumed the risk of injury.
This doctrine it based upon common sense and common justice,
and has been so often enunciated as to dispense with the neces-
sity for citation of authorities in its support. It is true that
this rule has been most often applied in cases growing out of
injuries by railroads, machinery or mechanical appliances, but
it is not perceived why it is not equally applicable to the case
at bar.

On the return trip of the boat, cold was encountered such as
had never been experienced by the oldest inhabitant of this sec-
tion. For the first time in a lifetime, perhaps in all our
history, exposure to the cold had become a menace and a
danger to human life and limb. A new peril had arisen, of
which appellee knew nothing and of which he had never
thought. An ignorant negro, who had passed his whole
life in the far South, his experience of cold taught him
that it was attended merely by bodily discomfort and not
by danger. His only means of knowledge lay in his own ex-
perience and observation, and it is safe to assume that he had
never heard or thought of or imagined that he could be injured
by exposure to cold. He had never seen such cold, he could
not have known that it was dangerous. It will be readily un-
derstood that the extraordinary and unheard of nature of the
weather is the basis of our action. It cannot therefore be
reasonably contended that the appellee assumed the risk of this
peril by which he suffered injury.

The danger was not so glaring that no prudent man would,
under like circumstances, have undertaken it, for, as we have
shown, it was not and could not have been understood or ap-
preciated by appellee. It cannot even be said by way of ex-
cuse or palliation that appellant was, equally with appellee,
ignorant of the danger, for this hypothesis is wholly inconsis-

tent with the testimony of Captain Richardson.   It is perfectly manifest, therefore, that, appreciating the danger to his deck-hands, the captain took the chance of their being injured.

Common experience teaches and the law presumes that the master is possessed of experience and intelligence superior to that of the servant.   He is engaged in the transaction of his own business with all of the details and risks and hazards of which he is or ought to be familiar.   He can easily refrain, and it is his duty to refrain, from ordering his servants into a situation of unusual danger.   When he sees and appreciates the danger and yet requires the servant to face it, it is he and not the servant, who assumes the consequent risk.   *Stevens* v. *R. R. Co.*, 96 Mo., 207, s. c. 9 Am. St. Reps., 336; *Shortel* v. *City of St. Joseph*, 104 Mo., 114, s. c. 24 Am. St. Rep. 317; *Patterson* v. *Pittsburg, etc., R. R. Co.*, 76 Pa. St., 389, s. c. 18 Am. St. Reps., 413; *Kehler* v. *Schwenck*, 151 Pa., St., 505; *East Tennessee, etc., R. R. Co.* v. *Duffield*, 12 Lea, 63, s. c. 47 Am. St. Rep., 319; *Wagner* v. *Chemical Co.*, 147 Pa. St., 475, s. c. 30 Am. St. Rep., 475; *Fitzgerand* v. *Conn. Paper Co.*, 155 Mass., 155; *Hough* v. *Texas Pa. R. R. Co.*, 100 U. S., 213; *Wabash R. R. Co.* v. *McDaniels*, 107 U. S. 454.

There is, however, another and a strong consideration which should be weighed.   Appellee was a seaman, under section 4612 of the revised statutes of the United States, which reads as follows: "In the construction of this title, every person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the 'master' thereof; and every person, apprentices excepted, who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a 'seaman,' and the term 'vessel' shall be understood to comprehend every description of vessels navigating on any sea or channel, lake or river, to which the provisions of this title shall be applicable, and the term 'owner' shall be taken and understood to comprehend all the

several persons, if more than one, to whom the vessel shall belong.''

Section 4596 provides: '' Whenever any seaman who has been lawfully engaged, or any apprentice to the sea service, commits any of the following offenses, he shall be punished as follows : . . . . Fourth, for wilful disobedience to any lawful command, by imprisonment for not more than two months, and also, at the discretion of the court, by forfeiture out of his wages of not more than four days' pay.'' *Eldridge* v. *Atlas, etc., Co.*, 134 N. Y., 187.

Dan Smith, therefore, had he dared to disobey orders, subjected himself to fine and imprisonment, unless, indeed, he could show the orders were unlawful. But how was he to pass upon this question, ignorant as he was, and without opportunity for advice or deliberation?

*S. S. Hudson*, on same side.

This is a very novel suit. The cause of the injury is a complaint unknown to this state, and, in a great measure, unknown to the law books, but the rules governing the relations existing between the master and servant easily solve it.

Appellant could not, under any view, be entitled to the peremptory instruction, because the testimony of appellant is such as would justify a verdict in this case for the appellee, independent of the testimony ·adduced on the part of the appellee. For instance, Captain Richardson, who directed the service of appellee, testified:

''*Q*. Did you load any more cotton?

''*A*. I told the crew to take that on, but no more would be loaded.

'' *Q*. Why did you say that?

''*A*. Because it was so cold and bad.

'' *Q*. Why did you not take on the cottonseed?

''*A*. I did not want to kill my negroes.''

Certainly it can be inferred from this testimony that Cap-

tain Richardson, who was in command of the boat, and directing the services of the appellee, knew that the weather was unprecedented, and that to rush out these negroes to labor in such weather would destroy their lives. With such frank statements and plain confessions coming from the defense, how could appellant expect a peremptory instruction except upon the assumption that appellee could judge the dangers as well as the master, and should have refused to perform the orders and move the cotton? This position is easily answered by the acts of 1898, p. 85, which says: Every employe of any corporation shall have the same rights and remedies for an injury suffered by him from the act or omission of the corporation or its employes where the injury resulted from the negligence of a superior officer, or of a person having the right to direct or control the services of the party injured.

The command to load the cotton, under the circumstances, was requiring appellee to perform services that were not incident to his employment, as such weather had never been known here since the discovery of the Yazoo river; therefore, how could it be a danger incident to the employment, or contemplated by the parties at the time of the contract of employment? But suppose it was an incident to the employment, is not the master presumed to know the dangers incidental to the employment in which his servants are engaged, and bound to warn them of hazards not willingly assumed by them?

Argued orally by *Murray F. Smith*, for appellant, and by *O. W. Catchings*, for appellee.

CALHOON, J., delivered the opinion of the court.

Appellee engaged as a deck hand on one of appellant's boats for a round trip from Vicksburg to Greenwood and back. On the return the weather became cold to a degree without precedent in this climate, and, at the landing at Silver City, the mate, by the captain's orders, took appellee and divers other deck

hands on shore and caused them to roll in eighteen bales of cotton which were covered with ice and snow. This work caused three fingers of one of appellee's hands to be frost-bitten, so that they had to be, and were, amputated. Because of this, he sued for and obtained damages. The court below refused a peremptory instruction asked for by appellant, which we think should have been given. The able and ingenious arguments of counsel fail to parallel this case with cases' involving superior knowledge of the person in command, and, as two of them concede, the statute of 1898, p. 85, in reference to unsafe machinery, ways or appliances, or improper loading of cars, has no application. The laborer must be presumed to have knowledge equal, if not superior, to his employer of the effect of cold upon his feelings and person. His own temperament is better known to him than any one else, and his own sensations sound the alarm to himself. Men are presumed to have ordinary common sense, until the contrary is shown, and the law does not speculate on degrees of knowledge about weather.

*Reversed and remanded.*