Argued December 5, 1941; affirmed February 10; motion for additional attorneys' fee denied March 24; petition for rehearing denied April 21, 1942

## COX *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(121 P. (2d) 919, 123 P. (2d) 800)

Before Bailey, Lusk, Rand, Rossman and Brand, Associate Justices.

*C. S. Emmons*, Assistant Attorney General (I. H. Van Winkle, Attorney General, and Oliver Crowther and C. L. Marsters, Assistant Attorneys General, on the brief), for appellant.

*Victor R. Griggs*, of Portland (Marks & McMahan, of Albany, on the brief), for respondent.

ROSSMAN, J. This is an appeal by the Industrial Accident Commission from a judgment of the circuit court in favor of Gerald Francis Cox, 22 years of age, to whom we shall refer as the plaintiff. He was injured September 13, 1939, while riding as a workman upon a truck which was hauling pulp wood. The injury and its extent are not disputed, nor is it claimed that the plaintiff was not engaged in the performance of his duties at the time of the accident.

This appeal presents only two issues: (1) Was Fred Randall the employer of the plaintiff, as claimed by the latter, or was the plaintiff's employer his father, Clarence E. Cox, as claimed by the defendant; (2) was the circuit court authorized to order payment in a lump sum of the attorney's fee of $500.

The plaintiff's father was a farmer, but in the summer of 1939 he cut 64.6 cords of pulp wood upon land nine miles from Lebanon. The father had no truck or other means of bringing the wood to the paper mill in Lebanon. The mill, however, was willing to pay a price satisfactory to Cox in the event the wood was delivered to the mill. Fred Randall, 19 years of age, lived with his father upon a farm near the wood and had access to a truck belonging to his father. When Cox inquired of Fred whether he would be willing to haul the wood, Fred replied in the affirmative. His principal occupation was farm work. Cox and Fred, after dickering about the price, agreed that Fred should

haul it for $1 a cord. The agreement contemplated that Fred should furnish the truck, the necessary gasoline, oil and other essentials including a binder rope. Before entering into the agreement Fred inquired of Cox whether he would furnish his son (the plaintiff) to help handle the job. The reply was no. Thereupon Fred hired the plaintiff and agreed to pay him 15 cents per cord. The work then commenced. On the second day the accident occurred. While the testimony is scant, it indicates that Fred had done hauling before with this truck.

The truck had only the ordinary license required of vehicles of that kind. No effort had been made to comply with any of the public utility commissioner's requirements. The plaintiff's father entered Fred as an employee in a timebook which he intended to submit to the defendant. He did this upon the advice of one of the defendant's auditors.

After the plaintiff's injury Fred secured another helper and completed the performance of his undertaking. He then received from Cox a check for $64.06. Fred chose the plaintiff as his helper, and later the substitute, on his own volition; that is, Clarence Cox neither suggested nor required him to hire either.

The defendant does not claim that any of the above agreements or arrangements were lacking in good faith or were resorted to for a false purpose. Its brief expressly states: ''We do not say that Clarence E. Cox, in entering into an agreement with Fred Randall for the hauling of wood at $1 per cord, was seeking to evade a payroll tax. The evidence was to the contrary * * * ''

The above is a review of all the evidence. All of the testimony came from the plaintiff's witnesses. The

defendant presented no evidence. Each party moved for a directed verdict. The plaintiff's motion was sustained.

It is agreed that, since the plaintiff resided at home with his father and since no special application had been made in his behalf, § 102-1733, O. C. L. A., demands an affirmance of the rejection of his claim if he was an employee of his father.

The defendant directs attention to § 102-1703, O. C. L. A., which, after assigning to the terms "employer" and "workman" their commonplace meanings, says:

"If any person engaged in a business and subject to this act as an employer, in the course of such business shall let a contract the principal purpose of which is the performance of labor, such labor to be performed by the person to whom the contract was let or by such person with the assistance of others, all workmen engaged in the performance of the contract shall be deemed workmen of the person letting the contract, if the person to whom the contract was let was not engaged in a separate business involving the occupation covered by the contract at the time of commencing the performance of the contract."

■ That statute was intended, we believe, to provide a means whereby the commission could give effect to realities by deeming as a workman a person who comes within the commonplace meaning of that term. We are certain that no one believed that that statute would become a means of importing into industrial compensation law the unusual and at times artificial interpretations of the term "labor" often found in decisions dealing with mechanics' liens and the penal bonds exacted of contractors who construct public works. Decisions of that type are cited by the defendant in support of its contentions. We believe that the words

of the statute should be given the ordinary meaning which men engaged in practical affairs place upon them.

■ We are satisfied that the above-reviewed evidence is sufficient to sustain the circuit court's finding that Fred Randall had agreed to haul the wood as an independent contractor; in short, that he was not an employee of Clarence E. Cox. We believe it also supports the finding that the plaintiff was an employee of Randall. The part of § 102-1703, O. C. L. A., above quoted, in our opinion, does not demand a contrary conclusion. The contract between Clarence Cox and Randall did not call primarily for the performance of labor, but for the transportation of the wood. The labor was incidental. The use of the truck was what Cox wanted.

The assignment of error based upon the award of the attorney's fee does not challenge the reasonableness of the amount, but the direction for its payment in a lump sum. Possibly we need not add that the objection comes from the defendant and not from the plaintiff. The latter, in a writing signed by him before the entry of the order, had approved his attorney's charge and had asked that payment be made in a lump sum. No one claims that the writing was improperly induced. The defendant contends that whether the payment should be made in a single unit or in monthly installments was within its discretion. It offers no other criticism of the order.

Section 102-1775, O. C. L. A., provides that charges made by attorneys to injured workmen for legal services in the prosecution of claims against the commission shall be subject to the approval of the commission if the matter is disposed of by that administrative body,

or by the court before which the matter was determined if an appeal was taken to the court. This provision is shortly followed by this sentence: "Any claim so approved shall, in the manner and to extent fixed by the commission or such court, be a lien upon such compensation." In *Carr v. State Industrial Accident Commission*, 153 Or. 517, 57 P. (2d) 1278, this court sustained a lump sum award. In so doing, the decision took particular note of the words "manner" and "extent" found in the sentence just quoted. The decision held that the word "manner" conferred the power to determine whether payment should be made in a lump sum, in installments, or by combination of the two methods. Particularly, the decision said:

"When the commission fixes the attorney's fee, it fixes its amount (extent) and the method (manner) by which it shall be paid; when it becomes the duty of the court to fix the attorney's fee, the court fixes the amount (extent) and the method (manner) the attorney shall be paid, whether in a lump sum and the amount deducted from the total award segregated, or in partial monthly installments."

Lest we be misunderstood, we explain that our use of the term "lump sum" means discharge of the entire obligation by a single payment out of accrued installments, and not an award of the kind authorized by § 102-1766, O. C. L. A. The part of *Carr v. State Industrial Accident Commission*, supra, which bears upon statutes of the kind just cited is immaterial to our present purposes.

By virtue of the judgment of the circuit court under attack, a total of $2,020 became payable to the plaintiff. That sum was payable in all events—the death of the plaintiff before payment in full would not terminate

the liability: § 102-1761, O. C. L. A. Likewise, since the reasonableness of the attorney's fee is not challenged, its payment must be made; and since it is payable out of funds in the defendant's possession, the defendant must pay it. Therefore, the manner of payment whether in a lump sum or in installments will neither prejudice nor benefit the defendant in any particular. At the time of the entry of the order under attack $540 was payable to the plaintiff in the form of accumulated installments. That sum was more than sufficient to discharge the awarded attorney's fee. Since that time $450 more has become payable.

When the attacked judgment was entered, the plaintiff was 22 years of age, was unmarried and living with his parents. His financial condition is not disclosed by the record, but apparently it was such that he preferred that his attorney be paid in full. It is clear that he did not desire credit. We notice that his father's signature also appears upon the petition presented to the court requesting lump sum payment. Likewise, the father attended the trial.

■ Section 102-1775, O. C. L. A., as interpreted in the Carr decision and the writing signed by the plaintiff, authorized the circuit court to enter the order under attack; provided the exercise of sound discretion concerning the manner of payment warranted payment in a lump sum. Had the order under review not been made, the plaintiff would be compelled, against his will, to continue an indebtedness which the award enables him to satisfy and which he evidently is anxious to discharge. Although we have scanned the record with care, we have found nothing which indicates that that order should not have been made. If the record indicated that payment in a lump sum was directed through

an abuse of the circuit court's discretion, we would have the right to order that payment be made in some other manner: *Dickison v. State Industrial Accident Commission*, 165 Or. 306, 107 P. (2d) 104. Recently this court, in a case in which the parties had not expressed their wishes, entered an order requiring the defendant to pay to the attorney upon his fee ($750) one-fourth of the accumulated fund and a percentage of the subsequent monthly payments until the fee had been completely paid. In *Dickison v. State Industrial Accident Commission*, supra, this court found that the record indicated an abuse of the circuit court's discretion in directing the payment of the attorney's fee ($500) in a lump sum. The beneficiary in that case was a widow who was the mother of six minor children. The industrial accident had cost the life of the workman. Our decision substituted for payment in a lump sum, payment in installments.

■ The duty exacted of courts by § 102-1775, O. C. L. A., that they fix the manner in which the attorney's fee shall be paid contemplates not the promulgation of a universal rule applicable in all cases regardless of the financial circumstances of the beneficiary of the fund, but the exercise of discretion in each individual case.

The adage that the laborer is worthy of his hire is as applicable to an attorney who has rendered valuable services as to the man who carries a dinner bucket. In the present instance the plaintiff and his father apparently recognized that the attorneys performed valuable services. They established a fund which at the present time consists of approximately $1,000 cash with a like sum to enter the fund shortly. We know of no reason why the plaintiff's request that his attorney be now paid should be ignored. We, therefore, find that the

circuit court did not abuse its powers when it entered the order under attack.

The above disposes of all contentions. The judgment of the circuit court is affirmed.

BAILEY and RAND, JJ., concur.

---

LUSK, J. I concur in the foregoing opinion on the question of the plaintiff's right to compensation and in the result on the question of attorneys' fees. My views as to the attorneys' fees are expressed in the specially concurring opinion of Mr. Justice BRAND.

---

BRAND, J. (specially concurring). I concur in the opinion of the court on the right of plaintiff to compensation, and with some reluctance I also concur in the result on the issue concerning attorney's fees. I do not think we should be bound by or give our approval to the decision in the case of *Carr v. State Industrial Accident Commission*, 153 Or. 517, 57 Pac. (2d) 1278, cited by the majority.

In that case, the workman was injured on July 5, 1934; he received compensation until September 18, 1935, when the claim was closed over his protest. Upon appeal and jury trial in the circuit court it was determined that he was permanently and totally disabled. Judgment on the verdict was rendered as of January 23, 1936, slightly more than four months after the closing of his claim. It is obvious that, unless the workman had a wife and more than 10 children under 18 years of age, there could not have accrued as much as $500 between the closing of this case and the date of the judgment: 7 O. C. L. A., 102-1756. Yet the court ordered that an attorney's fee be "paid in a single

cash payment forthwith, and that said sum of money be charged against the reserve of the said claimant.'' Such a ruling, in my opinion nullified the beneficial purposes of the compensation act. Under the provisions of 7 O. C. L. A., 102-1775, in an appeal to the circuit court the judge determines the extent of the fee and the manner of its payment. If, at the time of the judgment, a sufficient sum of compensation, both due and unpaid, has accrued to more than cover the whole attorney fee, I concede that the judge has discretionary power to prefer the attorney to the injured workman, though I should never do it. But when, as in the Carr case, the court awarded to the attorney more than was then due the workman, I think it exceeded both its discretion and its power. Its action was in effect an order that the workman's compensation be paid in a lump sum before its normal accrual. Under the law of 1933 (effective in the Carr case) and under the present law, the only body empowered to authorize lump sum payments is the Commission. 7 O. C. L. A., 102-1766. If, in the Carr case, the injured workman had recovered or died shortly after the trial it seems likely that the cash payment of the attorney fee would have absorbed all of the installments which had accrued from the date of the accident to the time of the judgment. The attorney would have taken a $500 contingent fee which had been computed and fixed on the basis of a recovery that the workman never received. The Carr case purported to be based on a statute since amended. It received the concurrence of but two judges, two others concurring in the result. I think it was wrong on the facts and should not influence our decision here.

I concede that the case at bar is on a different footing. Here the injured workman was awarded perma-

nent partial disability so that under the express provisions of 7 O. C. L. A., 102-1761, his beneficiary in the event of his death would be entitled to receive the balance of the award to the full sum of $1,900 for 100 per cent loss of a hand plus $120 for total temporary disability. The plaintiff was unmarried, was apparently in no immediate need and requested the court to pay the full attorney fee out of the unpaid accruals which were due at the date of the judgment. The payment was within the discretionary power of the court, but the result is unfortunate, and as a precedent it would, I think, be unjust. At the date of the judgment and by virtue of it the plaintiff became entitled to $120 for his temporary total disability which covered the period from the date of the accident, September 13, 1939, to January 15, 1940. He was entitled to compensation for permanent partial disability at the rate of $35 per month, from January 15, 1940, to January 15, 1941 (the date of the judgment), or a total of $420. Thus, at the date of the judgment, $540 was presently due the workman. Out of this, the court awarded to the attorney $500, leaving the injured man $40 compensation after 16 months of disability without pay. I think it is more in harmony with the spirit of the statute that judicial discretion should be so exercised as to give to the attorney, out of an accrued sum at the date of the judgment, that portion of his total fee which the accrued sum bears to the estimated total compensation to which the plaintiff will ultimately be entitled. The attorney should thereafter receive his fee in ratable installments as plaintiff receives his compensation.

In a recent case this court expressed disapproval of the practice of ordering the payment of the entire attorney's fee out of the first funds which have accrued.

In the case of *Dickison v. State Industrial Accident Commission*, 165 Or. 306, 107 Pac. (2d) 104, the plaintiff's wife filed a claim on account of the death of her husband. The Commission rejected the claim, but on appeal she received judgment. The family of the deceased consisted of the plaintiff and six minor children. Nine and a half months had elapsed between the death of the workman and the date of the judgment, and under the statute (7 O. C. L. A., 102-1755) considerably more than $500 was presently due. The circuit court awarded an attorney fee of $500 to be paid "in a lump sum." On appeal by the Commission, this court in an opinion by Mr. Justice RAND modified the judgment as to the manner of payment of the attorney's fees and directed that "25 per cent of each installment payable to respondent shall be paid to respondent's attorneys until the full sum of $500 has been paid." The Dickison case resembles the one at bar. In both cases sufficient funds had accrued to cover the total attorney's fee. There are dicta in the Carr case which seem to me to support the position here advanced, although the actual decision does not. See, also, *Hinkle v. State Industrial Accident Commission*, 163 Or. 395 at 409, 97 Pac. (2d) 725, (1940).

The authorizing of a cash payment to the attorney of the full amount of the fee at the time of the judgment would work manifest injustice if a workman who had been awarded permanent partial disability should wholly recover (a contingency which of course is impossible in this case where there was the loss of a hand). The attorney would receive full pay though the workman might never receive the full compensation upon which the fee was calculated. Again, if the workman were the sole support of a family the policy here

followed might cast them all on relief for many months while the compensation which had accrued was appropriated for the benefit of the attorney instead of to the debts and expenses of the workman. In such a case, I think it the duty of the court to withhold approval even if the workman had contracted that his attorney should be paid out of the first funds.

It may be that I have gone beyond the narrow issues of the instant case, but it is because experience on the circuit leads me to believe that the trial courts are entitled to these observations as a guide to discretion.

---

Motion for additional attorneys' fee denied March 24, 1942

On Motion for Attorneys' Fee
(123 P. (2d) 800)

BAILEY, J. The attorneys for Gerald Francis Cox, the respondent herein, have filed a motion for an order fixing the fee for their services as attorneys in this court. Accompanying the motion is a statement signed by their client, under date of February 25, 1942, to the effect that he had agreed to pay them a fee of $250 in connection with the appeal of this case. In this statement Cox requests that such fee be paid in a lump sum out of the compensation that is now due him from the State Industrial Accident Commission.

The original opinion in this case was rendered February 10, 1942. One of the two matters therein decided was that the trial court's approval of $500 as attorneys' fees, to be paid in a lump sum from moneys then due the claimant Cox, was within the discretionary power of that court, and that there was no such manifest abuse of discretion on the part of the court as to call for a reversal or modification of its order.

Section 102-1775, O. C. L. A., provides in part as follows:

"No claim for legal services or for any other services rendered before the commission in respect to any claim or reward for compensation, to or on account of any person, shall be valid unless approved by the commission, or if proceedings on appeal from the order of the commission in respect to such claim or award are had before any court, unless approved by such court."

This was passed by the legislature as § 1 of chapter 115, Oregon Laws 1933. Shortly after this enactment a committee was appointed by Oregon State Bar to recommend a "proposed schedule of maximum fees in workmen's compensation cases". The schedule recommended by the committee was approved by the board of governors of Oregon State Bar. See *Oregon State Bar Bulletin*, XVI Oregon Law Review (1936-1937) Supplement, pages 57-59, and *Hinkle v. State Industrial Accident Commission*, 163 Or. 395, 97 P. (2d) 725.

In making the report containing the schedule the committee stated, among other things, the following:

"Since the enactment of the workmen's compensation law in 1913, until 1933, there was no provision in the law relating to the fixing of attorney's fees in com pensation cases. While many county bar associations had adopted schedules of minimum fees, no recommendation was made with regard to fees in this class of cases. It was the practice among attorneys generally to charge claimants under the compensation law in accordance with the schedule of contingent fees in personal-injury actions. There were numerous abuses, and many complaints were made to the State Industrial Accident Commission by injured workmen respecting the fees charged, and a considerable number of these complaints were justified. It was the practice of some attorneys to base their fee charges upon the entire amount of compensation awarded to the claimant, even

though the claimant may have obtained a portion of the award in the first instance without the intervention of the attorney.''

The report, after setting forth the statute here involved, thus continued:

''. . . We are attaching hereto a suggested schedule of fees, which, unlike other schedules that have been adopted, is a schedule of maximum fees applicable to all cases except those in which unusual services have been rendered. The great majority of cases involved under the workmen's compensation law involve only the question of the amount of compensation to be awarded. In a smaller number of cases there may also be involved the question as to whether the injuries are compensable, that is, whether they arose out of and in the course of the workman's employment and were sustained by accidental means. The procedure in all of the cases is practically identical, and in the great majority of cases the services rendered by the attorneys are comparable. The committee, therefore, believes that a schedule of maximum fees is indicated.''

We shall not here refer in detail to the schedule of fees based on the recommendations of that committee and approved by the board of governors, for the reason that on August 23, 1941, the board of governors of Oregon State Bar approved a schedule of maximum fees in workmen's compensation cases recommended by another special committee of Oregon State Bar, which schedule is not essentially different from that contained in the former report above mentioned. (For a summary of the later report see Oregon State Bar Bulletin for September, 1941.) Attention is directed to the following, contained in the schedule last approved by the board of governors:

''2. Attorney's fees shall be based only upon the amount of compensation paid to the workman and not upon medical, hospital and other expenses of treatment.

\* \* \*

"5. If an appeal is taken from the award of the State Industrial Accident Commission to the circuit court, a fee shall be allowed not exceeding 30% of the increase in compensation, with a minimum fee of $50.00 and a maximum fee of $500.00, provided a trial has been had or commenced upon the merits.

"6. A fee of $750.00 shall be the maximum fee to be allowed an attorney for a trial in the circuit court and an appeal to the supreme court.

"7. If exceptional circumstances be shown in a detailed, sworn statement setting forth the actual work which the attorney has done, the commission or court may allow a larger attorney's fee than the maximum amount fixed herein. It is believed that cases justifying larger fees than the maximum fees above mentioned will be extremely rare."

■ These schedules of fees as approved by the board of governors of Oregon State Bar are of material assistance to courts in passing upon the fees to be allowed attorneys in workmen's compensation cases: *Hinkle v. State Industrial Accident Commission*, supra. ·

In the instant case the total amount of the plaintiff's recovery was $2,020 in compensation in addition to payment of his medical, surgical and hospital expenses. The question involved in the trial of the case in the circuit court was whether the plaintiff was, at the time of the accident in which he sustained injuries, the employee of his father or of one Fred Randall. The transcript of testimony, which includes all the evidence introduced in the circuit court, comprises forty-two pages. No evidence was offered on the part of the defendant, the State Industrial Accident Commission. At the close of the plaintiff's case the defendant moved for a directed verdict, and the plaintiff made a similar motion, whereupon the trial court directed the jury to return a verdict in favor of the plaintiff.

The brief of the respondent in this court consists of twenty-six pages, fifteen of which are taken up with the question of whether the plaintiff was subject to the provisions of the workmen's compensation act at the time the accident occurred; and the remaining pages are devoted to a discussion of whether the court had discretion to order the payment of attorneys' fees in a lump sum.

In *Wintermute v. Department of Labor and Industries*, 183 Wash. 169, 48 P. (2d) 627, the supreme court of Washington had before it the question of reasonableness of a fee allowed attorneys for an injured workman. The Washington "statute provides for an attorney's fee, not in excess of *a reasonable fee*, in an appeal from the department to the courts". In that instance the trial court allowed attorneys' fees of $1,000. In reducing the amount to $400 the supreme court said:

"There is nothing difficult in the procedure for attorneys in taking an appeal, the burden being mostly on the department to file a certified record in the superior court. The trial in this case to a jury, it appears, lasted about one day. The statement of facts contains sixty-eight typewritten pages. Other features of the case, essential to be considered in fixing the fee, though not more specifically mentioned or referred to here, have been duly considered, and, in our opinion, the amount fixed by the trial court is so greatly unreasonable and excessive as to require a modification".

The facts in that case, briefly, are the following: Peter Wintermute, while working in hazardous employment, received an accidental fracture of his left hip. His claim for compensation was allowed, and on December 28, 1931, finally closed with payment for time lost to December 10 of that year, with an award

of twenty-five degrees permanent partial disability. In January, 1933, Wintermute made an application to reopen his case on the ground of aggravation of his disability, and this was denied. He then applied for a rehearing before the joint board of the department of labor and industries. A rehearing was granted, but before it was held and on February 10, 1933, the claimant died. "His widow, Ivie M. Wintermute, then filed an application for compensation, spoken of as a 'pension,' on account of his death, on the ground that the injury suffered by him on May 8, 1930, was the cause of his death. She also made claim for compensation due deceased for which he applied prior to his death. Upon both of her claims being disallowed by the department, including the joint board, she appealed to the superior court." The cause was tried by a jury, which returned a verdict in favor of Mrs. Wintermute on both her claims. The judgment entered on the verdict was affirmed on appeal.

*Adkins v. Staker et al.*, 130 Ohio St. 198, 198 N. E. 575, was an action by an injured employee to recover from the defendants, his attorneys, the sum of $700 received by them as fees in excess of the amount allowed by law. The plaintiff had applied to the industrial commission for a disability award, which was denied. He then appealed to the court of common pleas, where he was represented by the defendants and a judgment was rendered in his favor, resulting in an award of $1,456. On application of the attorneys the trial judge allowed them the sum of $195.60 as their fee.

At the time they were employed by the plaintiff, the attorneys entered into a written agreement with him, by the terms of which they were to receive for

their services one-half the total award made by the commission, but in the event that no award was made, the attorneys were to receive nothing for their services. The Ohio statute then in force provided as follows:

"The cost of any legal proceedings, authorized by this section, including an attorney's fee to the claimant's attorney to be fixed by the trial judge, shall be taxed against the unsuccessful party; provided, however, that such attorney fee shall not exceed twenty per cent of any award up to the sum of five hundred dollars, and ten per cent of all amounts in excess thereof, but in no event shall such fee exceed the sum of five hundred dollars."

In Ohio the amount of the fee fixed by the trial judge for the attorney of a successful claimant is paid out of the industrial accident fund in addition to the award of compensation. In the case under discussion the attorneys received the $195.60 fixed by the trial judge and in addition $700 out of the compensation awarded to the claimant. With reference to the statute last quoted, the Ohio court said:

"Under the above-quoted section the trial judge has discretion to fix the fee within the percentages named, basing the amount fixed upon the nature and character of services rendered by the attorneys; however, he is precluded in any case from fixing a fee exceeding the sum of $500. It is clear that any private contract which entails the payment of a greater fee than that specified by statute is invalid; for if claimant and attorney are permitted to fix fees it would nullify and render ineffectual that clause authorizing the trial judge to do this.  *  *  *

"Many states have adopted statutes controlling fees paid in workmen's compensation cases and, where it appears that fee contracts are controlled or inhibited by state law, they have been held to be unenforceable,

and if money has been paid thereon by a claimant to an attorney, it may be recovered by the claimant."

The opinion then points out that the compensation payable to an injured employee under the workmen's compensation act is not a private matter between employer and employee, but the public is also interested in preserving and safeguarding the fund. After holding that the maximum fee that the attorneys were entitled to receive therein was the amount fixed by the trial judge in the appeal from the commission's order, the court said:

"This was not a total disability award. Let us assume that it was; that a bread-winner maimed for life, or that his widow with minor children, was the claimant; and that a similar fee contract was under consideration by this court. We can conceive of no state court, functioning under a constitution and law similar to our own, that would sustain an equal division in the proceeds awarded to the bread-winner or to his widow. With a knowledge of the facts and a better acquaintance with the law, the lawyer occupies a tremendous advantage over the claimant which it is possible for the former to capitalize."

■ In the case at bar it appears from the record that the claimant has agreed that his attorneys shall have a fee of $750. It is only in instances of such an agreement had between claimant and attorney, however, that the court has authority and occasion to pass upon the reasonableness of the fee charged. This was pointed out in *Davis v. State Industrial Accident Commission*, 156 Or. 393, 404, 64 P. (2d) 1330, 66 P. (2d) 279, 68 P. (2d) 118, which involved the statute herein controlling, in the following language:

"The statute is inartfully drawn. We have examined it again and have arrived at the conclusion that

it confers authority upon the commission and the courts to approve fees only after the client and attorney have agreed upon the amount. We have become convinced that it confers no authority upon the commission nor the courts to do anything about fees, in the absence of an agreement between client and attorney in regard thereto. If a dispute arises between the attorney and the commission concerning the approval of the fee, then the court may adjust the dispute after the parties to it have submitted statements.''

The legislature in enacting in 1933 what is now § 102-1775, *supra*, recognized the urgent necessity of protecting the injured workman by requiring that all claims for attorneys' fees for services rendered in cases coming under the workmen's compensation law should be subject to supervision by the commission and the courts. Oregon State Bar has also taken note of the difference between this and other kinds of service rendered by attorneys, by adopting a schedule of maximum fees for workmen's compensation cases, in contrast to minimum fees in other matters.

In the instant case the plaintiff suffered the loss of his right hand and forearm to a point about one-third below the elbow, for which he was entitled to $1,900 in compensation: § 102-1760, O. C. L. A. The additional $120 which he was awarded was for temporary total disability for four months at the rate of $30 a month.

■ The nature of the injury suffered by the workman and the amount fixed by statute as his compensation therefor should be kept in mind in determining the reasonableness of his attorneys' fees. In most appeals from the commission to the courts there is only one question to be decided, either whether the workman is subject to the workmen's compensation act, or the

extent of his injuries. Few appeals involve both questions. If the workman is subject to the act, the law provides the amount of the award to be made him. The degree of his injury is fixed by the jury, when an appeal is taken to the circuit court from the order of the commission. The procedure in appeals from the commission's orders is not difficult and is practically standardized. If the claimant is successful, the fee for his attorneys as approved by the court is made a lien upon the compensation payable to him.

The reasonableness of attorneys' fees is usually presented to the court *ex parte*. Seldom is the compensation claimant's voice heard. He does not have knowledge of the work performed by his attorneys or the reasonableness of the fee to which he has agreed. He is not in a position to employ other lawyers to represent him in court on the question of fees.

██ When we are called upon to determine the reasonableness of attorneys' fees in compensation cases, we must bear in mind the purpose sought to be accomplished by the enactment of the workmen's compensation law and the fact that attorneys' fees for services thereunder were by the 1933 act (§ 102-1775, *supra*), in furtherance of that purpose, made subject to supervision by the commission and the courts. It is our opinion that the $500 allowed in the instant case as the fee of attorneys for the plaintiff is liberal payment for the work done by them both in the circuit court and the supreme court. Therefore, the motion for an additional attorneys' fee in this court is denied.

KELLY, C. J., and BELT, J., did not participate in the consideration of this motion.

ROSSMAN, J. (dissenting). Believing, as I do, that the attorney's fee upon which the plaintiff and his counsel have agreed should be approved by this court, I dissent.

The majority say that a client is not equally familiar as his attorneys concerning customary charges for professional services. That, of course, is true; and if the attorney is given to unfairness this lack of equality of knowledge may result in excessive charges. But the inequality of knowledge exists in virtually every instance in which a client and his attorney agree upon a fee. There is nothing peculiar in that respect about this kind of case. It also exists in matters between physician and patient as well as in numerous other relationships. In this case, as is evident from the majority opinion, no one claims that the attorneys overreached or took any advantage of their client. All that we know is that the client is satisfied with his attorneys' services and desires them to be paid a fee of $250 for their services in this court. The plaintiff is not an incompetent. The fee was a contingent one and its size does not warrant suspicion. To the contrary, its amount is within the approval of the schedule of fees prepared by the board of governors of the Oregon State Bar. Nor is there anything about the character or professional standing of the plaintiff's counsel which begets distrust. The opposite is true. They are men who have demonstrated in years of active practice their adherence to the codes of professional conduct. For instance, one of them is president of the Oregon State Bar; another is a member of the board of governors of that organization. Without going on, I say again there is nothing in the circumstances which can warrant any suspicion. If this

fee is to be disapproved, we must then say that under no circumstances could a charge of more than $500 be made by a fair-minded attorney.

The majority say that this case required no great skill on the part of the attorneys. They indicate that cases of this kind are simple. Yet an examination of the recent volumes of the Oregon Reports shows a surprisingly large number of appeals of this kind, and also shows that the court has not always found the issues in them easy of solution. The fact that these attorneys so handled the case that simplicity of issue was the result may not have been due to lack of complexity in the facts. Mr. John W. Davis, in his brilliant address entitled The Argument of an Appeal (26 A. B. A. Jour. 895) admonishes attorneys in the presentation of causes in appellate courts to "go for the jugular vein." It was adherence to that maxim which caused this case to be presented in its commendable simplicity. That, however, was due to the skill of the attorneys. An examination of the briefs in some other appeals of like kind indicates what labyrinths untrained counsel can construct in formulating their assignments of error.

I believe that § 102-1775, O. C. L. A., was intended to serve no other purpose than to afford the client protection against undue influence from his attorney. I am satisfied that it was never intended to enable the commission or the court, as the case might be, to fix the fee. If such had been its purpose it would have so stated. Certainly its purpose was not to authorize either the commission or the court to fix fees contrary to the wishes of the client. Whenever it appears that undue influence prompted the client to acquiesce in the amount of the fee, the latter should be disapproved by the court. In all other instances approval should

follow as a matter of course. A charge incommensurate with the services performed in itself indicates that the attorney employed undue influence. The size of fees, however, is largely a matter of opinion. If two attorneys do not charge precisely the same amount for work of identical kind, the larger charge is not proof of unfairness. I know of nothing concerning the fee submitted for our approval which shows that it is incommensurate with the work the attorneys performed. The following is the condition of the record: (1) the plaintiff hired these attorneys; (2) they served him effectively; (3) he has approved the fee which is submitted for our approval; and (4) there is no claim made by anyone that the fee is excessive. We cannot say that the charge is one which a client in his right senses would not agree to pay, nor can we say that it is one which an honest and fair attorney would not make. These circumstances demand the conclusion that anyone who proposes to disapprove the charge submitted to us must assume the burden of proof and submit something which shows that undue influence was exercised by the attorneys. But nothing has been submitted. To the contrary, sustaining the fee, we have the plaintiff's approving signature. It is true that the majority review some decisions which whittled down some fees. Those decisions were gleaned from the thousands which appear in the books and which, unlike the others, found a basis for disapproval. Even the brief excerpts from those decisions which appear in the majority opinion readily differentiate them.

Had we the arbitrary power to promulgate schedules of fees we might then be warranted in fixing $500 as the maximum fee in cases of this kind; but such is not our power.

Let us bear in mind that if § 102-1775, O. C. L. A., confers upon the courts the authority to cut down a fee, notwithstanding the fact that the client approves it, then the same act confers exactly the same authority upon the commission. A mere reading of the section of our laws just cited shows that the terms "court" and "commission" are used in the alternative form. I cast no aspersions upon the three commissioners who, I know, are men of the finest of integrity, but I do not believe that the purpose of § 102-1775 was to grant such sweeping power over fees. If it does, the bar has been reduced to the status of a suppliant.

I dissent.