Argued and submitted July 10, the decision of the Court of Appeals affirmed and the
judgment of the circuit court reversed and case remanded to circuit court
November 8, 1990

# Ronald L. MARTELLI,
*Respondent on Review,*

*v.*

# R.A. CHAMBERS AND ASSOCIATES,
*Petitioner on Review.*

## (TC 87-1402; CA A49992; SC S36892)

800 P2d 766

Lloyd W. Helikson, Eugene, argued the cause for petitioner on review. On the petition was John E. Jaqua, Eugene.

Karen Werner, Albany, argued the cause for respondent on review. On the response was James C. Egan, Albany.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

FADELEY, J.

## FADELEY, J.

In this case the court is asked to interpret and apply the exclusive liability provisions of ORS 656.018(1)(a).[1] Defendant general contractor claims immunity under that statute from the negligent injury claim of a plaintiff who worked for defendant's subcontractor. The issue is: Are Oregon Workers' Compensation benefits the exclusive remedy of a subcontractor's employee injured allegedly because of the acts or omissions of the general contractor? The trial court granted defendant's motion for summary judgment holding that the general contractor was "immune" based on a finding "that defendant was an employer as contemplated under the Workman's [sic] Compensation Law."[2]

The Court of Appeals reversed and remanded, holding that the summary judgment should not have been granted because the general contractor was not the injured worker's employer as that term is used in ORS 656.018, notwithstanding ORS 656.029(1),[3] and that the exemption from liability

---

[1] ORS 656.018(1)(a) states:

"The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of compensable injuries to the subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such injuries, except as specifically provided otherwise in ORS 656.001 to 656.794."

[2] ORS 656.005(14)(1985) stated:

" 'Employer' means any person, including receiver, administrator, executor or trustee, and the state, state agencies, counties, municipal corporations, school districts and other public corporations or political subdivisions, *who contracts to pay a remuneration for and secures the right to direct and control the services of any person.*" (Emphasis added.) This definition subsection is presently numbered ORS 656.005(13), not (14), as it was in 1985.

ORS 656.005(27) states:

" 'Worker' means any person, including a minor whether lawfully or unlawfully employed, *who engages to furnish services for a remuneration, subject to the direction and control of an employer* and includes salaried, elected and appointed officials of the state, state agencies, counties, cities, school districts and other public corporations, but does not include any person whose services are performed as an inmate or ward of a state institution." (Emphasis added.)

[3] ORS 656.029(1) provides in part:

"If a person awards a contract involving the performance of labor[,] * * * the person awarding the contract is responsible for providing workers' compensation insurance coverage for all individuals, other than those exempt under ORS

extends only to an actual employer as defined in ORS 656.005(14)(1985). *Martelli v. R.A. Chambers and Associates,* 99 Or App 524, 783 P2d 31 (1989). We affirm the decision of the Court of Appeals.

## FACTS

Lebanon Community Hospital accepted the total bid of defendant to construct and remodel per plans and specifications provided by the hospital. In the summer of 1985 and in documents entitled "Subcontract," defendant contracted with Associated Sheet Metals, Inc., to do parts of the work which defendant had become obligated to do under its general contract with the hospital. Under the subcontract, Associated was to

"furnish all materials, labor, tools, equipment and supplies necessary for performance of this subcontract as provided herein, in a proper, efficient and workmanlike manner, and in strict accordance with the subcontract and contract documents, and any and all building codes or state, county or municipal laws, orders or regulations applicable to the work."

The contract documents described the end result which Associated was to produce.

Defendant's form subcontracts required that Associated maintain several kinds of insurance, including "Statutory Workmens' Compensation as required by law," and provided that "certificates of above insurance shall be forwarded to contractor [defendant] immediately after subcontract has been accepted. All insurance policies shall include a clause that insurance shall not be cancelled or reduced, restricted or amended until ten (10) days after the contractor has received written notice."

Plaintiff, who was on Associated's payroll only, and for whom Associated in fact provided workers' compensation coverage, was assigned by Associated to work on the roof of the hospital project. A stairway constructed by defendant for

656.027, who perform labor under the contract unless the person to whom the contract is awarded provides such coverage for those individuals before labor under the contract commences."

use of workers on the roof collapsed, causing plaintiff's injuries, on November 5, 1985. Defendant maintained a foreman with general supervisory authority at the hospital project site.

Defendant asserts that it was plaintiff's "employer" as that term is used in ORS 656.018(1) or, alternatively, that it should be deemed plaintiff's employer because it would have been responsible for providing workers' compensation coverage for plaintiff under ORS 656.029(1), had Associated failed to do so. Therefore, defendant generally argues that it should be granted immunity as plaintiff's employer. Because these points depend upon a construction of the relevant statutes, we turn to that subject.

## LEGAL HISTORY OF THE IMMUNITY CLAIMED

Oregon's Workers' Compensation Law first came into being as an innovation adopted legislatively in 1913. Its original form included direct antecedents of present statutory provisions important to the decision of this case. Oregon Laws 1913, chapter 112, section 12, in part provided:

> "[T]he right to receive such sum or sums [as workers' compensation] shall be in lieu of all claims against his employer on account of such injury or death except as hereinafter specially provided."

Immediately following that grant to an employer of immunity from other claims by its workers, and coupled with it by sentence structure, the first compensation act provided for an injured worker's action against a negligent third party, as follows:

> "[P]*rovided, however,* that if the injury to a workman occurring away from the plant of his employer is due to the negligence or wrong of another not in the same employ, the injured workman * * * shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit, and if he take under this act the cause of action against such other shall be assigned to the State for the benefit of the accident fund. * * * Any such cause of action assigned to the State may be prosecuted or compromised by the department in its discretion."

In return for immunity granted to his employer, the worker injured in the course of employment, and in a way defined by that act, was guaranteed compensation, regardless whether a fault or neglect on the part of the employer caused the injury.

The worker, however, retained the right to seek damages from parties other than his employer where those others were at fault. And the state, for the benefit of the accident insurance fund, simultaneously acquired legal rights in any injured worker's claim against other parties at fault.

From the inception of the first compensation act, these rights and immunities expressly depended upon who was a worker and who was his or her employer. Section 14, a definition section, in part provided:

> "The term 'employer' used in this act shall be taken to mean any person, firm or corporation, but not including municipal corporations, that shall contract for and secure the *right to direct and control* the services of any person, and the term 'workman' shall be taken to mean any person, male or female, who shall engage to furnish his or her services subject to the direction or control of an employer." (Emphasis added.)

All three of these legislative ideas — the right of the worker to compensation regardless of fault, the right of the employer providing compensation insurance to immunity, and the right of both the worker and the insurance fund to recover from third parties at fault — have continued to the present day. Likewise, the "right to direct and control" was and is the test for employer status when the immunity based on that status is in issue.

When the compensation law was extensively revised in 1965 so that insurance could be provided by the employer directly, by purchasing it from a private insurer, or by purchasing it from the State Accident Insurance Fund, each of those legislative ideas was retained. Oregon Laws 1965, chapter 285, section 4(12) and (20), continued to define employer and worker in terms of "the right to direct and control the services of any person," and in terms of "remuneration" for which the worker "engages to furnish his services * * * subject to the direction and control of an employer," and for which the employer "contracts to pay," just as present ORS 656.005(27), *supra* note 2, still does. Damage recovery from a third party, to benefit both worker and the insurance carrier, was continued in sections 44-49 of Oregon Laws 1965, chapter 285, essentially as provided now in ORS 656.576 to 656.593. The immunity of an employer from any worker's claims, other than for workers' compensation, was continued in section 6 of the 1965

act, as worded in the 1913 Act, quoted *supra,* and now phrased in modern terms, in ORS 656.018(1), *supra* note 1.

The 1913 Act, section 24, provided in part:

"In respect to any injury happening to any of his workmen during the period of such default in any payment required hereunder, the defaulting employer shall not, if such default be after demand for payment, be entitled to any of the benefits of this act, but shall be liable to the injured workman * * * as he would have been prior to the passage of this act."

This penalty by loss of immunity, continued in section 7 of the 1965 revision, today is found in ORS 656.020 and implemented by ORS 656.578.

Unlike the Workers' Compensation Law provisions we have just discussed, ORS 656.029(1), note 3, had no direct antecedents in the 1913 Act. Its idea was not enacted until Oregon Laws 1933, chapter 116, section 2. However, the problem addressed was not unknown during the 1913 to 1933 period. Employers and workers avoided the law's protections of the worker and its corollary immunity of the employer by not establishing a direct, master-servant employment relationship. *See, e.g., Smith v. State Ind. Acc. Comm.,* 144 Or 480, 482, 23 P2d 904, *reh granted,* 25 P2d 1119 (1933) (relation of master and servant and "contract for hire" required before compensation law applies); *Vient v. State Industrial Acc. Com.,* 123 Or 334, 262 P 250 (1927) (claimant later held independent contractor not entitled to workers' compensation under home builder's coverage because no master-servant relationship with right to exercise complete control existed).

Oregon Laws 1935, chapter 113, section 1, amending the 1933 Act, in part provided:

"[I]f any person engaged in a business and subject to this act as an employer, in the course of such business shall let a contract the principal purpose of which is the performance of labor, such labor to be performed by the person to whom the contract was let or by such person with the assistance of others, all workmen engaged in the performance of the contract shall be deemed workmen of the person letting the contract, if the person to whom the contract was let was not engaged in a separate business involving the occupation covered by the contract at the time of commencing the performance of the contract."

The exclusion of independent contractors from the definition of who was an employer's worker for purposes of immunity remained, but where a contract for labor as such was awarded, the new legislative rule applied. Codified in 1953 as ORS 656.124, the 1935 act was repealed by Oregon Laws 1965, chapter 285, section 95. The legislative rule of 1935 proved too valuable to do without, and its pre-1965 version was re-enacted as Oregon Laws 1979, chapter 864, and codified as ORS 656.029.

During the statute's 30-year existence, the right to direct and control a worker's performance of specific tasks remained the touchstone used by the courts to determine whether an employer-worker relationship obtained, entailing the employer's immunity from other liability where workers' compensation insurance was provided by employer.

Two years after the 1935 amendments to the labor-contract provision now embodied in ORS 656.029, in *Davis v. State Ind. Acc. Com.*, 156 Or 393, 64 P2d 1330 (1937), a partner in a sawmill was killed driving a truck for a logging company, during a time when the sawmill was shut down for lack of logs. The logging company was under contract to deliver logs to the mill, at $2.80 per thousand board feet. The court held that the partner, when killed, was an employee of the logging company and not of the mill. This holding was reached, after consideration of the statutory progenitor of ORS 656.029, because the logging company was an independent contractor obligated to pay for, and privileged to direct and control, the work of the mill-partner while he was hauling logs for the logging company. Although in a sense engaged in a common enterprise, the logging company was not "engaged in the same pursuit" as the sawmill, and the logging company provided the equipment and directed the work performed. The logging company was an "independent contractor" and the deceased was its worker, for purposes of Workers' Compensation Law.

Likewise, in *Cox v. State Ind. Acc. Com.*, 168 Or 508, 121 P2d 919 (1942), the court held that the predecessor of ORS 656.029 did not apply under the facts of that case. An injured worker was held to be the employee of a subcontractor hauling wood, not the employee of the contractor who let the contract for the hauling. In *Cox,* a farmer had a contract to supply pulpwood from his farm to a paper mill. He contracted

with a neighboring second farmer, who owned a truck, to haul the pulpwood to the mill at $1.00 per cord. The second farmer hired the first farmer's son, at $.15 per cord, to assist in loading and hauling, at which task the son was injured.

Notwithstanding the statutory language, the court stated, the son was the employee of the hauling subcontractor, as an independent contractor, because the contract did not "call for performance of labor primarily but for the transportation of wood. * * * The use of the truck was what [contractor] wanted." *Id.,* 168 Or at 513. *Accord: Reynolds et al v. Harbert et al,* 232 Or 586, 375 P2d 245 (1962) (truck owner hauling another's rock under contact to deliver it to site at so much a yard was killed while hauling; widow held entitled to sue for negligence the person who let that contract, notwithstanding predecessor to ORS 656.029 and the immunity provisions of ORS 656.018(1), because deceased was not rock-contractor's employee); *cf. Brazeale v. State Ind. Acc. Comm.,* 190 Or 565, 227 P2d 804 (1951) (driver for log-trucking company under exclusive contract to haul for logging company killed while servicing truck, as required by trucking company, was not logging company's employee; distinguishes predecessor ORS 656.029 because deceased's task when killed was performed for trucking company's purpose, not that of logging company).

■ Defendant's contentions that plaintiff was its employee as a matter of law under ORS 656.018(1) or 656.029 are not supported by the foregoing review of the development and application of those statutes. As this court stated in *Bell v. Hartman,* 289 Or 447, 452, 615 P2d 314 (1980), concerning the Oregon Workers' Compensation Law:

> "That the law means to anchor the compensation scheme to the employment relation is evident throughout the statute. The key term in the statutory scheme is 'subject worker.' An employer is bound to assure payment of compensation only for 'subject workers,' ORS 656.017, *cf.* ORS 656.052. In return for the right to compensation, the subject worker and his beneficiaries are deprived of the legal remedies for injuries which they might otherwise have against his employer. ORS 656.018. The statute's coverage of an employer is derivative of its coverage of a worker * * *."

■ Determination of who is a subject worker depends, under our law, on who pays for the worker's services and who directs and controls the specific work. *See Bell v. Hartman,*

*supra* (jockey was independent contractor, not employee of horse's owner or trainer, or of racetrack or racing commission); *Woody v. Waibel,* 276 Or 189, 197, 554 P2d 492 (1976) (owner-driver of log truck was sufficiently controlled by logging operator who paid him to establish that driver was in master-servant relation, not independent contractor); *Harris v. State Ind. Acc. Com.,* 191 Or 254, 268, 230 P2d 175 (1951) (union member elected by local union to negotiating committee to do bidding of local union was not International Union's employee); *Streby v. State Ind. Acc. Com.,* 107 Or 314, 215 P 586 (1923) (person painting porch at daily wage was house-owner's employee where owner directed when, where, and materials to use in painting). Defendant is not entitled to immunity from a third-party negligence claim because it is not plaintiff's employer, a relationship which ORS 656.018 explicitly requires before that statute is applicable.

■     Defendant contends that having its foreman at the job site, generally supervising the project, is sufficient control of the work. It is not. Defendant further argues that the foreman's presence and duties create a situation of joint supervision of the work with plaintiff's direct employer and that that is sufficient control. Plaintiff counters that, since the enactment of Oregon Laws 1975, chapter 152, joint supervision and control no longer confers immunity. Plaintiff is correct. Before the 1975 act, ORS 656.154 in part read:

> "If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person. *However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.001 to 656.794.*" (Emphasis added.)

After the 1975 act, only the first sentence remains as present ORS 656.154; the joint supervision defense to a third party negligence claim was repealed *in toto.*

Defendant next observes that this court has held that indirect payment of remuneration may be enough, in some circumstances, to support the conclusion that a worker receiving that remuneration is an employee and subject worker of

the party originating the payment.[4] Defendant relies on *Whitlock v. State Ind. Acc. Com.,* 233 Or 166, 377 P2d 148 (1962), and *Gibson v. Safeway Stores, Inc.,* 307 Or 120, 764 P2d 548 (1988). To that list defendant could add *Blacknall v. Westwood Corporation,* 307 Or 113, 764 P2d 544 (1988), which is similar to *Gibson.*

All three cases involve use of temporary labor supplied through another entity to whom payment for the services of the worker is made for labor services provided under the direction and control of the originator of the remuneration. In *Gibson,* a security-guard service company supplied Safeway with guards who were controlled in six listed ways by Safeway, and whom Safeway could fire from the job. 307 Or at 122. In *Blacknall,* Adia Services, Inc., provided a temporary worker to its client, a construction company, which was "[b]eyond any question" exercising direction and control of the worker. 307 Or at 118. In *Whitlock,* property owners contracted with a high-school student club or organization to paint a structure and "had the right to direct and control the manner in which the services were rendered" by club members. 233 Or at 169.

Defendant's contract with its subcontractors does not provide defendant any right to direct or control the subcontractor's employees, whose labor the subcontractor is to supply along with materials, tools and equipment. Based thereon, we believe *Whitlock, Blacknall,* and *Gibson* do not help defendant establish as a matter of law, as it must to merit summary judgment, that it was plaintiff's employer because the subcontract calls for production of an end result. Direction and control of the subcontractor's worker is lacking. Moreover, as *Gibson,* noted, the 1975 repeal of the second sentence, formerly part of ORS 656.154, withdrew immunity of a second employer in a common enterprise.

Next, defendant contends that the general contractor is "legally obligated" or "ultimately responsible" for providing workers' compensation coverage under ORS 656.029 and 656.556 read together, *if* plaintiff's employer had not done so. Defendant then urges that these statutes have "the effect of

---

[4] Of course, the Lebanon Community Hospital originated the remuneration ultimately received both by defendant's own workers and its subcontractors' workers.

shifting the responsibility for providing workers' compensation coverage for subcontractor employees from the subcontractor to the general contractor."

The facts of this case contradict the conditions required for any obligation of the general contractor to arise, assuming without deciding that the statutes cited would otherwise apply as defendant argues. Plaintiff's employer provided coverage. Defendant's contracts with that employer protected defendant from any unfairness which could be argued to arise from the hypothetical case defendants have constructed. Because we do not decide hypothetical cases, we do not consider this contention further.[5]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to that court.

---

[5] Defendant also asserts that cases from other jurisdictions should be applied to determine the meaning of Oregon statutory provisions defining "employer" and "worker." However, Oregon's statutes and those from the other jurisdictions are not similar.