959 F.2d 240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anthony LANCASTER; Karen Lancaster, Plaintiffs-Appellants,
v.
E.S.S. CORPORATION, an Arizona corporation, Defendant-Appellee.
 No. 90-35712.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 3, 1992.
Decided April 3, 1992.
 
 Before CYNTHIA HOLCOMB HALL, O'SCANNLAIN and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Anthony and Karen Lancaster appeal from the district court's order granting summary judgment in favor of E.S.S. Corporation (E.S.S.), a general contractor. Anthony Lancaster was injured while working for a subcontractor retained by E.S.S. to construct a penstock as part of a hydroelectric project. At issue is whether Oregon's Worker's Compensation law provides the Lancasters' exclusive remedy and therefore bars their personal injury action against E.S.S. For the reasons stated below, we reverse.
 
 Discussion
 
 3
 E.S.S. asserted there was an employer-employee relationship between itself and Anthony Lancaster and that therefore the Lancasters' exclusive remedy was worker's compensation under ORS 656.018(a).[1]
 
 
 4
 In this diversity action, Oregon law controls. In Oregon, an employee may have more than one employer for purposes of worker's compensation. Blacknall v. Westwood Corp., 307 Or. 113, 118, 764 P.2d 544, 547 (1988). An employer-employee relationship exists if two conditions are met: the worker (1) furnished "services for remuneration" and (2) was "subject to the direction and control" of the alleged employer. See id.
 
 The Right To Direct and Control
 
 5
 The district court decided that Lancaster and E.S.S. had an employer-employee relationship based on certain allegations in the Lancasters' complaint[2] and Oregon case law that existed at the time. However, a little over two months after the district court's judgment, the Supreme Court of Oregon decided Martelli v. R.A. Chambers and Assoc., 310 Or. 529, 800 P.2d 766 (1990), which provides the current substantive law of Oregon.
 
 
 6
 The Oregon Supreme Court rejected the general contractor's argument that it was the employer and was therefore immune from a personal injury action. Id. at 533, 800 P.2d at 768. The Court distinguished between a contract requiring primarily the performance of labor and one requiring the services of a separate business engaged in the occupation covered by the contract at the time performance of the contract commenced; i.e., whether an independent contractor is involved. The Court then distinguished one of the three cases the district court relied on to conclude that E.S.S. was Lancaster's employer, Gibson v. Safeway Stores, Inc., 307 Or. 120, 764 P.2d 548 (1988). According to the Oregon Supreme Court, an employer-employee relationship existed in Gibson because that case
 
 
 7
 involve[d] use of temporary labor supplied through another entity to whom payment for the services of the worker is made for labor services provided under the direction and control of the originator of the remuneration.
 
 
 8
 Martelli, 310 Or. at 539, 800 P.2d at 772. Gibson, therefore, involved a contract that required the performance of labor, rather than the production of an end result.
 
 
 9
 The other cases the district court relied on for its decision are distinguishable as well because they, like Gibson, involved temporary labor "supplied through another entity to whom payment for the services of the worker is made for labor services provided under the direction and control of the originator of the remuneration." Id. See Robinson v. Omark Indus., Inc., 46 Or.App. 263, 266, 611 P.2d 665 (1980), rev. denied, 291 Or. 5, 627 P.2d 1263 (1981) (a temporary help service directed the injured worker to the defendant's premises, but the defendant had the right to control all aspects of his work); Spore v. Camac Veneer, Inc., 62 Or.App. 495, 661 P.2d 582 (1983) (a Pinkerton guard was assigned to defendant's plant by Pinkerton's, but received instructions from the plant on matters such as danger areas, visitors, suggestions regarding safety measures, etc.).
 
 
 10
 The Oregon Supreme Court distinguished Martelli from such cases involving purely the supply of labor:
 
 
 11
 Defendant's contract with its subcontractors does not provide defendant any right to direct or control the subcontractor's employees, whose labor the subcontractor is to supply along with materials, tools and equipment. Based thereon, we believe [that the cases that deal with labor supplied by a third party] do not help defendant establish as a matter of law, as it must to merit summary judgment, that it was plaintiff's employer because the subcontract calls for production of an end result. Direction and control of the subcontractor's worker is lacking.
 
 
 12
 Martelli, 310 Or. at 539, 800 P.2d at 772.
 
 
 13
 Lancaster has raised an issue of fact as to whether the subcontract required an "end result;" i.e., the construction of a penstock, or whether it required simply labor. Because triable issues of fact remain, summary judgment is inappropriate.
 
 
 14
 Accordingly, we REVERSE and REMAND.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 ORS 656.018(a) states:
 The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of compensable injuries to the subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such injuries, except as specifically provided otherwise in ORS 656.001 to 656.794.
 
 
 [2]
 These allegations in Lancaster's complaint, which the district court interpreted as admissions by Lancaster that he was controlled by E.S.S., are that:
 E.S.S. Corporation controlled the utilization of the scaffold Anthony Lancaster allegedly fell off, was responsible for the design of the scaffold in relation to the manner in which it was utilized, supervised or failed to supervise the manner in which the scaffold was utilized, directed Anthony Lancaster to utilize the scaffold, required Anthony Lancaster to utilize the scaffold, and had a duty to assist Anthony Lancaster in the performance of his job duties.