Argued December 10, 1925, affirmed February 9, 1926.

# HARRY ELMER BRADY *v.* OREGON LUMBER CO. ET AL.

(243 Pac. 96.)

**Trial—Nonsuit not to be Granted, if There is Competent Evidence to Support Allegations of Plaintiff Who is to be Given Every Reasonable Inference Therefrom.**

  .1.  A motion for an involuntary nonsuit should not be granted, where there is any competent evidence upholding material allegations of plaintiff's complaint, and every reasonable intendment arising therefrom must be made in plaintiff's favor.

**Master and Servant—Employer Operating Logging Camp Engaged in "Hazardous Occupation" Within Compensation Law and Employers' Liability Act.**

  2.  An employer operating a sawmill or a logging camp is engaged in a "hazardous occupation" within Workmen's Compensation Law (§ 6617, Or. L.), and is within Employers' Liability Act.

**Master and Servant—Employer, Rejecting Compensation Law, Deprived of Common-law Defenses.**

  3.  Under Section 6620, Or. L., an employer, rejecting the benefits of the Workmen's Compensation Law (§ 6617, Or. L.), is relieved from its obligations, but is also deprived of defenses of negligence of fellow-servant, contributory negligence, or assumption of risk.

**Master and Servant—Words "Arising Out of and in Course of Employment" Liberally Construed.**

  4.  The words "arising out of and in course of his employment," as used in Workmen's Compensation Law (§ 6616, Or. L.), should be given a broad and liberal construction.

**Master and Servant—"Risk Incidental to Employment" Defined.**

  5.  A risk is incidental to workman's employment when it belongs to, or is connected with, what he has to do in filling his contract of service, and such risk may be either an ordinary one directly connected with employment, or extraordinary and only indirectly connected therewith, owing to special nature of such employment.

---

  2.  Occupations or employments within Workmen's Compensation Acts, see notes in Ann. Cas. 1914D, 4, 33, 38, 39, 42. See, also, 28 R. C. L. 718.
  4.  Accidents arising out of and in course of employment within Workmen's Compensation Acts, see notes in Ann. Cas. 1913C, 4; Ann. Cas. 1914B, 498; Ann. Cas. 1915A, 126; Ann. Cas. 1915C, 779; Ann. Cas. 1916A, 388; Ann. Cas. 1916B, 1293; Ann. Cas. 1916D, 584, 694; Ann. Cas. 1916E, 166; Ann. Cas. 1917D, 195, 199, 209; Ann. Cas. 1917E, 321, 332; Ann. Cas. 1918D, 683; Ann. Cas. 1918E, 813, 1168. See, also, 28 R. C. L. 796.

Master and Servant—Freezing Deemed "Accident," Within Compensation Law.

6. If employee is actually frozen while engaged in performance of his contract of service with employer, such freezing is deemed an "accident," within Workmen's Compensation Law.

Master and Servant — Injury to Logger by Freezing While Going from Camp Closed for Season Held not Within Compensation Law, as "Arising Out of and in Course of Employment," nor Within Employers' Liability Law, as Received by Employee.

7. Where plaintiff was paid off and left logging camp in which he was employed after it had closed for the season, and company had ceased to have any control over its men, an injury due to freezing of plaintiff's feet when about six miles from camp on his way to town did not "arise out of and in course of his employment" as a logger for which employer would be liable under Workmen's Compensation Law, nor was plaintiff an employee at time of injury so as to come within provisions of Employers' Liability Act.

Negligence—Proximate Cause Question for Jury, Unless Facts are Undisputed.

8. Generally, the question as to what constitutes proximate cause in a personal injury case should be left to jury, but, where facts are undisputed, and are reasonably susceptible of but one inference, the question is one of law for the court.

Master and Servant—Failure to Run Train from Town to Logging Camp Held not Proximate Cause of Injury by Freezing While Traveling on Foot.

9. In action for personal injuries to logger who had left camp after it had closed for the season, and froze his feet on way to town, failure of defendant company to run a train from town to camp, as foreman represented it would do, was not the proximate cause of plaintiff's injury, where camp was in safe condition, and hence court properly granted company's motion for nonsuit on grounds that plaintiff abandoned a place of safety and willfully plunged into a dangerous situation.

Master and Servant—Failure to Run Train to Logging Camp Well Supplied Held not Emergency, Excusing Employee's Negligence in Leaving Camp on Foot in Snowstorm.

10. Where logging camp in which plaintiff was employed closed for the season, but was adequately prepared to take care of the men, and company failed to send a train from town to camp to take men in, the plaintiff was not thereby confronted with an emergency, excusing his negligence in leaving camp on foot in a snowstorm, resulting in his injury.

---

6. Recovery under Workmen's Compensation Acts for injury caused by freezing, see notes in L. R. A. 1918F, 938; 13 A. L. R. 975; 16 A. L. R. 1038; 25 A. L. R. 146. See, also, 28 R. C. L. 795.

**Master and Servant—Foreman, Expressing Erroneous Opinion as to Safety of Journey, not Liable to Employee Freezing in Storm.**

11. Where plaintiff, employed in a logging camp, set out in a snowstorm for town, the foreman of the camp was not liable for injuries sustained from freezing for expressing an opinion, though erroneous, as to safety of journey, or that storm would abate, and hence foreman was entitled to a nonsuit.

**Negligence—Question of Law for Court, Where Facts are Undisputed.**

12. In personal injury action, where facts are undisputed, and are reasonably susceptible of but one inference, question is one of law for court.

---

Accident, 1 C. J., p. 390, n. 17.
Master and Servant, 39 C. J., p. 35, n. 23.
Trial, 38 Cyc., p. 1553, n. 90, p. 1556, n. 12, p. 1558, n. 26.
Workmen's Compensation Act, C. J., p. 42, n. 12, p. 64, n. 10, p. 72, n. 69, p. 73, n. 76, 77 New, p. 74, n. 81, 82, p. 81, n. 29, 36, p. 136, n. 57, p. 137, n. 65, p. 138, n. 71.

From Hood River: Fred W. Wilson, Judge.

Department 2.

The plaintiff brought this action to recover damages for personal injuries resulting from the freezing of his feet while wading through snow. He was an experienced logger, and, for some weeks prior to sustaining· the injury complained of, was in the employ of the defendant Oregon Lumber Company, a corporation engaged in logging and the manufacture of lumber. The lumber company's sawmill is at Dee, a station in Hood River County, Oregon, at a point on the Hood River Valley railroad. Its logging camp was located on one of the northern slopes of the Cascade Mountains, about sixteen miles from Dee, and at an elevation of about 2,200 feet. Between this camp and Dee it operated a logging railroad. At a point about halfway between the termini of the road is a siding or switchback, which marks the site of a former logging camp known in the record as the "old camp." Charles

Blanding, the company's codefendant, was foreman of the defendant corporation, and, at all the times hereinafter referred to, was in charge of its logging camp and its employees.

The plaintiff proceeded upon the theory that the defendant company was engaged in a hazardous occupation as defined by the Workmen's Compensation Law, but that, having rejected the protection of that act, the company was deprived of certain defenses hereinafter mentioned. Plaintiff avers that the company was negligent in failing to anticipate the storm and to take precautions to protect its employees; that the law imposed upon the company a duty to operate its trains from Dee to the camp on Friday evening, November 18, 1921, in order to transport the men from the camp; that, on the following day, the company was grossly negligent in failing to operate its train from Dee to the logging camp, and in turning back the train that had started from Dee.

On the trial, a judgment of nonsuit was entered on motion of defendants. Plaintiff, appealing, says the court erred in its ruling upon the admissibility of evidence, "in determining as a matter of law that the logging camp, on Sunday, November 20, 1921, was a safe place for plaintiff to remain," and in determining that defendants were entitled to judgment of nonsuit.                         AFFIRMED

For appellant there was a brief over the name of *Messrs. Kaste & Rand,* with an oral argument by *Mr. John W. Kaste.*

For respondents there was a brief over the names of *Mr. E. L. McDougal* and *Messrs. Wilson &*

*Reilly*, with oral arguments by *Mr. John F. Reilly* and *Mr. E. L. McDougal*

BROWN, J.—1. At the outset we are confronted with the question of the sufficiency of the evidence to submit the cause to the jury.

It is a well-established rule in this jurisdiction that a motion for an involuntary nonsuit should never be granted where there is any competent evidence produced by the plaintiff tending to uphold the material allegations of his complaint. And, in considering such evidence, every reasonable intendment, and every fair and legitimate inference which can arise therefrom, must be made in favor of the plaintiff: *Farrin* v. *State Industrial Acc. Com.*, 104 Or. 452 (205 Pac. 984), and the Oregon cases there collected.

The plaintiff asserts that the occupation carried on by the defendant company is designated by law as hazardous, and that he suffered an accidental personal injury arising out of and in the course of his employment by the company.

2. Within the purview of the Workmen's Compensation Law of this state, the Oregon Lumber Company was engaged in a hazardous occupation: Section 6617, Or. L. The business of carrying on a sawmill or a logging camp is within the compass of the Employers' Liability Act: Sections 6785–6790, Or. L.

3. The lumber company having rejected the benefits of the Workmen's Compensation Law, it is relieved from all obligations to contribute thereto, but it is likewise deprived of the defense that the injury sued upon "was caused in whole or in part by the negligence of a fellow-servant of the injured

workman, that the negligence of the injured workman, other than his willful act, committed for the
purpose of sustaining the injury, contributed to the
accident, or that the injured workman had knowledge of the danger or assumed the risk which resulted in his injury." Section 6620, Or. L. If, as
plaintiff contends, he sustained personal injury by
accident arising out of and in the course of his
employment and resulting in his disability, within
the meaning of the Workmen's Compensation Law,
he comes within the embrace of that law. To determine whether he was a workman within the
meaning of that law, and to ascertain whether he
abandoned the camp on account of a perilous situation there, let us look to the evidence.

On Friday, November 18, 1921, snow commenced
to fall at the logging camp where plaintiff was
employed. However, he continued to work all that
day. By evening a foot of snow had fallen. On
Saturday morning the snow had reached a depth
of two feet at the camp and defendant Blanding,
the company's foreman, closed the camp for the season. Advising the men not to become excited, he
instructed them to roll up their blankets and told
them that a train would come up and take them out
that day. He also notified the men that he had
reduced the board from $1.20 to $.50 per day. The
time checks of the company's employees were made
out on Saturday. No train reached the logging
camp that day. A train had started from Dee early
Saturday morning in an attempt to reach the camp
but had turned back before reaching the halfway
point. The plaintiff says that Assistant Superintendent West ordered it to turn back because if it
came through the men would all leave camp. On

117 Or.—13

Sunday morning, the camp was in the midst of a fall of snow four feet in depth, and snow was yet falling. Some of the men, including the plaintiff, discussed the advisability of making their way out to the valley through the snow. Blanding said to the men that it would be dangerous for one of them to start out alone, but that, if a "bunch of five or six" would go together, they might make the journey in safety. A leader among those inclined to make the journey was one Emil Anderson, a hardy, strong and fearless Swede. He declared, in substance, that the only way to get away from the marooned camp was to walk and that he was going; that he intended to start at 1 or 1:30 that afternoon. The plaintiff, with four others, called for their time checks, shouldered their blankets,—one of them taking a suitcase in addition,—followed their leader, the adventurous Norseman, who went ahead and broke the way through the knee-deep snow along the grade of the logging road. The way was difficult. They had gone not more than a mile when the man carrying the suitcase threw it away and a little later he discarded some of his blankets. Striking deeper and unpacked snow, they sank to their waists as they attempted to push one foot ahead of the other. There was a deep canyon below and a mountain above. When night began to fall, the toilers through the snow were at least a mile and a half from their first objective, the "old camp." To add to their hardships, the snow gave way, a slide occurred, and four of the men were carried from 50 to 250 feet down the side of the canyon. It was only by the most strenuous efforts that they succeeded in climbing up the side of the canyon to regain the grade. They were about exhausted.

Anderson started to push onward, but, observing indications of another slide, he retraced his steps and all remained for the night, encamped in the snow, with no shelter other than a tree. Two of the men had lost their blankets in the slide. Their remaining blankets they spread upon the snow and they sat there throughout the night. When they encamped for the night, Anderson said he was tired, warm and "sweating." Such, no doubt, was the condition of the others. During the night the atmosphere became intensely cold. The men dared not sleep lest they freeze to death. At break of day the journey was resumed and the "old camp" was reached about 9 A. M. They entered the building and found coffee. They lighted a fire and made a pot of coffee, which they drank. Then, feeling somewhat refreshed, they pursued their laborious journey towards Dee. About 3:30 P. M. they reached a farmhouse about two and a half miles from Dee, where the plaintiff and some others of the party found shelter. Anderson pushed on to Dee. On reaching the farmhouse, plaintiff discovered that his feet were frozen. While en route to the hospital at Hood River, where he was taken on a sled, his feet were again exposed to the elements. In the course of his treatment at the hospital it was found necessary to amputate the toes of his right foot and his left leg below the knee.

Can the plaintiff be heard to say that he sustained personal injury by accident "arising out of and in the course of his employment" by the Oregon Lumber Company?

4. The words, "arising out of and in the course of his employment," as used in the Workmen's

Compensation Law, should be given a broad and liberal construction. This is the holding of many courts, including our own. In a valuable note appearing in Annotated Cases 1918B, 769, the view of different courts concerning a workman's right to compensation under laws similar to our own is set down. We quote therefrom the following:

"To entitle a workman to an award of compensation under a workmen's compensation act, his injuries must result from an accident both arising out of and in the course of his employment. The two elements must coexist. They must be concurrent and simultaneous. The one without the other will not sustain an award. Yet the two are so entwined that they are usually considered together in the reported cases and a discussion of one of them involves the other. * * 'In the course of' points to the place and circumstances under which the accident takes place and the time when it occurred. In order to restrict beyond the reach of question the words 'in the course of the employment,' the words 'arising out of' were added so that the proof of the one without the other will not bring a case within the act. The term 'arising out of' in the act points to the origin or cause of the injury. It presupposes a causal connection between the employment and the injury: *Larke* v. *John Hancock Mut. L. Ins. Co.*, 90 Conn. 303 (97 Atl. 320, L. R. A. 1916E, 584).

"The words 'out of' involve the idea that the accident is in some sense due to the employment: *Griffith* v. *Cole,* 183 Iowa, 415 (165 N. W. 577)."

In treating this question the Supreme Court of Texas said, in the case of *Lumbermen's Reciprocal Assn.* v. *Behnken,* 112 Tex. 103 (246 S. W. 72, 28 A. L. R. 1402, 1405):

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily, or or-

dinarily, or reasonably inherent in, or incident to, the conduct of such work or business. As tersely put by the Supreme Court of Iowa: 'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.' *Pace* v. *Appanoose Co.*, 184 Iowa, 498 (168 N. W. 918, 17 N. C. C. A. 682).''

In *Cox* v. *Kansas City Refining Co.*, 108 Kan. 320 (195 Pac. 863, 19 A. L. R. 90, 93), the Supreme Court of Kansas said:

''The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.''

In *Coronada Beach Co.* v. *Pillsbury*, 172 Cal. 682, (156 Pac. 212, L. R. A. 1916F, 1164, 12 N. C. C. A. 789), the court spoke as follows:

''The accidents arising out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employee's work, or to the risks to which the employer's business exposes the employee. The accident must be one resulting from a risk reasonably incident to the employment.''

In the case of *Fournier* v. *Androscoggin Mills*, 120 Me. 236 (113 Atl. 270, 23 A. L. R. 1156), the Supreme Court of Maine, in discussing the real test for determining when an accident arises out of and in the course of the employment of an employee under the Workmen's Compensation Law, thus announced a doctrine that runs through many leading cases:

"If an accident does not occur 'in the course of' it cannot 'arise out of' the employment. In this particular class of claims the determining factor is, we think, whether the accident occurred in the course of the employment. * * The words 'in the course of the employment' relate to the time, place, and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto: *Westman's Case,* 118 Me. 133, 142 (106 Atl. 532); *Larke* v. *John Hancock Mut. L. Ins. Co.,* 90 Conn. 303 (97 Atl. 320, L. R. A. 1916E, 584, 12 N. C. C. A. 308); *Bryant* v. *Fissell,* 84 N. J. L. 72 (86 Atl. 458, 3 N. C. C. A. 585); *Eugene Dietzen Co.* v. *Industrial Board,* 279 Ill. 11, 18 (116 N. E. 684, Ann. Cas. 1918B, 764, 14 N. C. C. A. 125)."

See, also, *Putnam* v. *Pacific Monthly Co.,* 68 Or. 36 (130 Pac. 986, 136 Pac. 835, Ann. Cas. 1915C, 256, 45 L. R. A. (N. S.) 338, L. R. A. 1915F, 782); *Susznik* v. *Alger Logging Co.,* 76 Or. 189 (147 Pac. 922, Ann. Cas. 1917C, 700); *City of Milwaukee* v. *Althoff et al.,* 156 Wis. 68 (145 N. W. 238, L. R. A. 1916A, 327).

We think the following excerpt from Point 1, Syllabus, of the case last above cited is a concise statement, easily understood, and applicable to the facts in the case at bar:

"The relation of master and servant may extend beyond the hours of the servant's actual labor, and even to places other than the premises on which he is employed; the relation existing whenever the servant is under the master's control and subject to his directions."

See, also, 39 C. J. 35.

5. We have seen that a risk is incidental to the workman's employment when it belongs to, or is connected with, what he has to do in filling his contract of service, and that such risk may be either an ordinary risk directly connected with the employment or an extraordinary risk only indirectly connected therewith owing to the special nature of such employment: *Bryant* v. *Fissell,* 84 N. J. L. 72, 78, 79 (86 Atl. 458, 3 N. C. C. A. 585).

6, 7. Freezing may constitute an accidental injury within the meaning of the Workmen's Compensation Law. See *Quick* v. *Fred Illston Ice Co.,* 195 App. Div. 676 (186 N. Y. Supp. 690); *Days* v. *Trummer & Sons, Inc.,* 176 App. Div. 124 (162 N. Y. Supp. 603); *McManaman's Case,* 224 Mass. 554 (113 N. E. 287). But see *Koofos* v. *Great Northern Ry. Co.,* 41 N. D. 176 (170 N. W. 859); also, *Cold Sunday Case,* 78 Miss. 140 (28 South. 807). If the plaintiff was accidentally frozen while engaged in the performance of his contract of service with the defendant company, we deem such freezing to have been an unlooked-for mishap, or an untoward event which was neither expected nor designed, and an accident within the meaning of the Workmen's Compensation Law: 1 C. J. 391, note (g). We have carefully read the evidence and the authorities cited by plaintiff in support of his various contentions. There came a time when the plaintiff ceased to be an employee of the Oregon Lumber Company. Had that time come before he sustained his personal injury? When his feet were frozen he was not in the woods engaged in logging. He was neither going to nor returning from his

labors, nor was he performing some act incidental to logging. The testimony shows that the logging camp had been closed for the season. All labor had ceased therein. The time checks of the workers had been made out. The active part of the camp was its boarding-house, and, as an inducement to the men to remain, board was reduced from $1.20 to .50 per day. However, when the work at the camp had ceased and the men had been laid off, they were no longer under the control or direction of the company. They were not only free from the control of the company, but they were free moral agents enjoying full liberty to leave the camp whenever they saw fit, without permission from the company or its representatives. The company had not the right to detain them against their will. The plaintiff is a man of experience and intelligence. He left the camp as a result of deliberate forethought. He had severed his connection with the logging camp and had voluntarily proceeded on his way therefrom for a distance of more than six miles and encamped for the night when his feet were frozen. To hold that he was injured in the course of his employment by an accident arising out of his employment as a logger would be to go beyond any case that we have been able to find in the books, and we have examined many decisions in addition to those cited by respective counsel. We are compelled to reject the contention that he was engaged in logging when injured, or in performing any service incidental thereto. This holding likewise disposes of the contention that the plaintiff was an employee engaged in logging within the provisions of the Employers' Liability Act. That act was designed for the protection of employees and declares, among other

things, what shall not constitute defenses, in actions prosecuted by employees against employers thereunder. See *Saylor* v. *Enterprise Electric Co.,* 106 Or. 421 (212 Pac. 477).

8, 9. Generally, the question as to what constitutes the proximate cause in a personal injury case should be left to the jury. But, in the cause at issue, the facts are undisputed. If it be conceded that the company's train could have made a run from Dee to the logging camp on Saturday but that it neglected to do so, under the facts of record this, of itself, does not render the company liable to the plaintiff for an omission of duty as alleged. Notwithstanding the train was not run to the camp on that day, the plaintiff remained safe and uninjured. He does not pretend to offer any evidence that the camp where he was situate was without food, shelter or warmth; and the learned judge granted the motion for a nonsuit upon the ground that plaintiff abandoned a place of safety and willfully plunged into a situation that proved to be dangerous. From our viewpoint of the law, we are satisfied with the ruling of the court below. The failure of the defendant company to run its train to the logging camp on Saturday was not the proximate cause of the injury to plaintiff's limbs by freezing on his journey from the camp.

10. The plaintiff asserts, in effect, that, owing to the defendant company's negligence, he was confronted with an emergency that excuses his own negligence, and, to support this contention, he would invoke the application of a rule that has heretofore been expounded by the courts:

"The rule judicially stated is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to

form a judgment, omits to act in the most judicious manner, is not chargeable with negligence." 20 R. C. L., p. 29.

This rule has been applied in a number of recent cases arising out of the operation of motor cars. Other cases have grown out of the railway service, while still others have originated from the handling of burning lamps, oils and gases. In a note to 37 L. R. A. (N. S.) 43, 47, numerous citations are found. From that note we take the following:

"When anyone is in danger through the negligence of another, his action in the emergency suddenly thrown upon him cannot be weighed in scales to determine whether he acted wisely or foolishly in the imminency of great danger." *Jacks* v. *Reeves,* 78 Ark. 426 (95 S. W. 781).

In the same note the following is given as the explanation and limitation of the rule:

"First, the peril or alarm must have been caused by the negligence of the one against whom indemnity is sought; second, the apprehension of peril, from the standpoint of the injured person, must have been reasonable; and, third, the appearance of the danger must have been imminent, leaving no time for deliberation. On the other hand, the danger must be judged by the circumstances as they appear, and not by the result."

The plaintiff cites and relies upon *Schumaker* v. *St. Paul Ry. Co.,* 46 Minn. 39 (48 N. W. 559, 12 L. R. A. 257). In that case, the plaintiff was injured by freezing, the immediate cause of which was his own act in walking from the point to which he had been transported and put to work by his employer, the defendant railway company, to the village of White Bear, a distance of nine miles, in extremely cold and dangerous weather, that place

being the nearest point at which necessary food and shelter could be had. The court held that the defendant could not be relieved from liability in the event it should be shown that the servant's act in so walking was apparently rendered necessary by the master's negligent act and was not in itself negligent. In sustaining the complaint charging the company with negligence, the court said:

"It must not be forgotten that the gravamen of the action is the negligence and carelessness of the defendant in leaving plaintiff at a place where he could not procure either shelter or food."

The facts in the above case are not the facts in the case at bar. This plaintiff was in a different situation. There is no testimony showing, or tending to show, that he had neither food nor shelter nor warmth at the camp, while in the Minnesota case the plaintiff was left to suffer from hunger and cold. Clearly, that case does not support the claim made by the plaintiff herein. According to his own statement, rather than stay at the camp the plaintiff "just took chances."

In addition to the authorities above referred to, see 36 Am. St. Rep. 848, note; 70 L. R. A. 925, note.

11. As to the case against Blanding, he is not liable for an erroneous opinion as to whether the storm would soon abate. Weather conditions were as obvious to the plaintiff as to Blanding. It follows that he is not responsible for an opinion concerning the safety of the journey from the camp to Dee in the snow, even though such opinion was erroneous. He was entitled to a nonsuit.

12. In granting the defendants' motion for a nonsuit, the trial judge but followed the rule that, where the facts are undisputed and are reasonably

susceptible of but one inference, the question is one of law for the court. We fully appreciate the fact that the plaintiff has suffered serious injuries, and that his cause has been presented to this court with much zeal and ability. But we cannot follow counsel in the application of the law to the facts involved herein.

This case is affirmed.                    AFFIRMED.

MCBRIDE, C. J., and BEAN, J., concur.

BELT, J., concurs in the result.