Argued January 10; reversed and remanded February 21, 1951

# BRAZEALE *v.* STATE INDUSTRIAL ACCIDENT COMMISSION OF OREGON

227 P. (2d) 804

566

568

*William A. Babcock,* of Portland, argued the cause for appellant. With him on the brief was Harry George, Jr., of Portland.

*Ray H. Lafky,* Assistant Attorney General, argued the cause for respondent. With him on the brief were George Neuner, Attorney General, and T. Walter Gillard and Roy K. Terry, Assistant Attorneys General.

Before Brand, Chief Justice, and Hay, Rossman, Latourette and Tooze, Justices.

HAY, J.

This is a workmen's compensation law case. The facts were stipulated, as follows: Donald M. Shelley was the owner of three logging trucks and was engaged in the business of contract log hauling. He himself drove one of the trucks, and he employed drivers for the other two. In July, 1948, Shelley contracted with a partnership, which conducted a lumbering operation under the assumed name of Lucky Four Logging Company, to haul for it exclusively, to the extent of its

requirements, for a consideration of an agreed price per thousand board feet of logs hauled. On November 5, 1948, Shelley employed George Robert Brazeale to drive one of his trucks on the Lucky Four job. Brazeale continued in that work thereafter, except for an occasional day or two when Lucky Four did not need trucks and Shelley could find other work for them, until the first week of December, 1948, when, because of winter conditions, the hauling was suspended. While on the Lucky Four job, Brazeale and the driver of Shelley's other truck were carried on the Lucky Four payroll, and Lucky Four contributed to the industrial accident fund for such drivers. Lucky Four also paid on account of said drivers such payroll deductions as are required by law in respect of employees, including federal social security, state unemployment, and industrial accident contributions. During the time that the drivers were hauling for Lucky Four, they were considered to be its employees. Shelley, however, had an agreement with Brazeale that he would pay him twenty per cent of the amount that he, Shelley, should receive from Lucky Four for logs hauled by the truck driven by Brazeale, less wages paid Brazeale by Lucky Four and payroll deductions made by Lucky Four for his account. The drivers were required by Shelley to see that their trucks were maintained in proper repair and to keep them greased, gassed, washed and oiled. Minor repair work and servicing were performed by the drivers at their own convenience, at times when they were not engaged in hauling, and were considered to be part of the duties of their employment by Shelley, compensated for by the twenty per cent payment of the sums earned by their respective trucks, as above mentioned.

While working for Lucky Four, the drivers were under its control and direction in practically the identical particulars which were considered to be evidence of an employer-employee relationship in *Bowser v. State Industrial Accident Commission,* 182 Or. 42, 185 P. 2d 891. Shelley, however, retained the right to discharge them at will, while Lucky Four could secure their discharge only by complaining to Shelley that their work was not satisfactory. The log hauling was an essential part of the Lucky Four logging operation.

It was customary for the drivers, with Shelley's knowledge and consent, to drive their trucks to their own homes at nights and on week-ends, when it was convenient to do so. They resided at Crabtree, Oregon, and customarily did their maintenance work there.

When Lucky Four shut down in December, 1948, Shelley was informed that the partnership wanted him to resume log hauling as soon as it was able to resume logging. He was instructed to hold his trucks in readiness to go back to work. Lucky Four had a collective bargaining agreement with the Sweet Home local of the International Woodworkers of America, which agreement covered Shelley's truck drivers as well as other Lucky Four employees. Under that agreement, the truck drivers had certain seniority rights, by virtue of which, in the event of a shut-down, they were to be laid off last, and, on resumption of work, called back first.

Shelley and his drivers were idle for about three months after the December lay-off. In the latter part of February, 1949, two of the trucks, one of which was driven by George Brazeale, hauled logs for Melvin Shelley, a brother of Donald Shelley's, under an arrangement between the Shelleys. Melvin Shelley was

a timber operator who had rejected the Workmen's Compensation Act. He carried group accident insurance for his regular employees. He did not consider Shelley's drivers as his employees, however, and did not carry them on his payroll. How they were paid while on that job does not appear.

Lucky Four resumed logging operations about March 7, 1949. During the work week of March 7-11, only one truck was required by it, which truck was furnished and driven by Shelley. Meantime, Brazeale and the other driver drove for Melvin Shelley, with the understanding that they would resume work for Lucky Four as soon as their trucks were needed. On March 11, Melvin Shelley's operation shut down, and thereupon Donald Shelley's drivers drove their trucks to their homes. That evening, Donald Shelley was informed by Lucky Four that probably two trucks would be needed on the morning of March 14, and that he would be advised definitely in that regard on Saturday night, March 12. Shelley passed this information on to Brazeale and the other driver. As it happened, on March 14, 1949, and for the remainder of that week, Lucky Four did in fact need and use three trucks. Shelley had given the drivers orders to have the trucks ready on Monday morning, March 14, to go to work at Lucky Four, or wherever else directed. On Saturday, March 12, the drivers proceeded to service their trucks, helping each other in the work. The work included greasing and washing, tightening bolts, etc. The trailers of logging trucks are carried upon the truck bodies when the trucks are not carrying logs, and, in order to service the trucks and trailers, it is necessary to unload the trailers. After the other driver's truck and trailer had been serviced, he attempted, with Brazeale's

assistance, to reload the trailer onto the truck. In this work they used power driven hoisting equipment belonging to a sawmill outfit at Crabtree, with which neither Shelley nor Lucky Four had any connection. They had used this equipment previously for the same purpose, with Shelley's knowledge but without the knowledge of Lucky Four. They did not have express permission from the sawmill people to use its equipment, but this was the only loading equipment available at Crabtree on that day. To load the trailer on the truck, using this equipment, required the work of two men, one to operate the machinery, and the other to hook the lines to the trailer and "spot" the trailer onto the truck. While they were so engaged, the hoisting equipment jammed, causing a part of it to fall on Brazeale, killing him instantly.

Plaintiff herein is administratrix of the estate of said decedent. In due course after his death, she filed with the defendant State Industrial Accident Commission her claim for compensation for his death, under the Workmen's Compensation Act. On May 3, 1949, the defendant made its final order rejecting such claim, on the ground that, on the date on which he sustained his fatal injury, decedent was not employed subject to the provisions of the Act. Plaintiff petitioned for a rehearing, which was denied, and plaintiff appealed to the circuit court for Multnomah County. Issue was joined upon plaintiff's supplemental complaint. Change of venue to the circuit court for Linn County was ordered. The facts, as we have said, were stipulated, and in due course the trial judge made findings of fact to the effect that decedent George Robert Brazeale was not, at the time of his death, an employee of Lucky Four Logging Company, and that the work in

which he was engaged at the time of his fatal accident was for his own benefit and that of "his fellow servant," Donald Shelley. Based upon such findings, the court concluded that the plaintiff should take nothing by her action, and accordingly entered judgment of dismissal. Plaintiff has appealed from such judgment.

■ The findings of the court upon the stipulated facts have the effect of a verdict. § 5-503, O.C.L.A. If such findings are supported by substantial evidence, they are conclusive upon this court. *Bowser v. State Industrial Accident Commission*, supra, 182 Or. 42, 44, 185 P. 2d 891.

Appellant suggests that the appeal involves the following questions: (1) Was decedent in the service of either Donald M. Shelley or Lucky Four Logging Company at the time of the accident? (2) Was Shelley an employer who was subject to the Workmen's Compensation Act? (3) Did the accident arise out of and in the course of employment of decedent by either Donald M. Shelley or the Lucky Four Logging Company? We add that appellant has also argued that decedent was an employee of both Lucky Four and Shelley.

Error is assigned upon the court's finding that decedent received no compensation from Shelley or anyone for servicing and maintaining the trucks, and its conclusion that he was not in the employ of Shelley in any of the operations described in the agreed statement of facts.

Respondent concedes, in effect, that decedent entered upon his work by virtue of a contract with Shelley; that both he and Shelley had the right to terminate the relationship at will; and that, at any particular time involved herein, decedent was an employee of the

particular logging operator to whose operation he and his truck had been detailed by Shelley. Respondent, however, does not concede that the record shows that decedent was paid compensation by Shelley.

■ Shelley, as stated, was a contracting log hauler, hiring his trucks and drivers to lumbermen for a consideration. Even while decedent was working upon the Lucky Four hauling job, and in its special employ, he was at the same time in the general employ of Shelley. This is evidenced by the facts that his contract with Shelley required the latter to pay him as wages twenty per cent of the gross earnings of his truck upon that job, he was required to maintain and service his truck, and Shelley retained the right to discharge him. Whatever compensation he received from Lucky Four was credited against the twenty per cent of his truck's earnings which were due him by Shelley. It is immaterial who paid him his wages; the important fact is that compensation was paid him either by Shelley or for Shelley's account. 1 Schneider, Workmen's Compensation, Perm ed 598, 600, § 227. Moreover, it is immaterial that the wages were based on the amount of timber hauled rather than upon the time spent in the employment. Id 600, § 227; and the fact, if it be a fact, that Shelley kept no payroll is no bar to compensation. Id 602, § 227; *Farrin v. State Industrial Accident Commission,* 104 Or. 452, 470, 205 P. 984. Decedent was Shelley's driver, and the only way in which Lucky Four could have removed him from the job was by complaining to Shelley about his work, as we have said. Shelley's right to discharge decedent would not in itself be sufficient to establish the relationship of employer and employee between them, in view of the fact that Lucky Four had the direction and con-

trol of decedent while he was hauling on its job. No doubt, if decedent had been injured while working on the Lucky Four operation, he would have been regarded as Lucky Four's employee within the contemplation of the Workmen's Compensation Act. § 102-1703, O. C. L. A. However, even during the progress of the Lucky Four job, there was a contractual relation subsisting between decedent and Shelley under which Shelley engaged to pay compensation to decedent and the latter undertook in consideration *pro tanto* of such compensation to perform the work of servicing and maintaining his truck, such work to be performed at other times than when he was hauling on the job, or, in the colloquial phrase, on his own time. Besides this, there was at least one occasion when Shelley contracted the use of his trucks and drivers in log hauling under a different arrangement from that upon which he contracted with Lucky Four. This was when he contracted to haul for his own brother, and the drivers were not carried upon the brother's payroll. Just how they received their compensation on that job is not disclosed by the stipulated facts, but it may be presumed that they did not work for nothing. We take it that the stipulated fact that they were not carried upon Shelley's brother's payroll warrants an implication that Shelley himself paid them.

■ We think, however, that the agreed facts do not justify the conclusion that at the time of his death decedent was in the employ of both Lucky Four and Shelley. He was killed on March 13, 1949, and prior thereto had not worked for Lucky Four, or been carried upon its payroll, or paid any compensation by it, or sustained any relationship with it, contractual or otherwise, since the first week of December, 1948. In

the interim, he had worked for a time, as stated, on Shelley's brother's logging operation. So, while it is true that an employee may be simultaneously in the general employment of one employer and the special employment of another, particularly in the purview of the Workmen's Compensation Act, 3 Schneider, Workmen's Compensation, Perm ed 4, § 779; *Warner v. Synnes,* 114 Or. 451, 472, 230 P. 362, 235 P. 305, 44 A. L. R. 904, that was not the situation here.

It is suggested that Shelley may have been the agent of Lucky Four for the purpose of having the trucks maintained and serviced, but there is nothing in the record to support such suggestion.

The court's failure to find that (a) Lucky Four was contributing to the state industrial accident fund for its employees, and therefore was subject to the Workmen's Compensation Law, (b) that Donald M. Shelley was an employer engaged in a hazardous occupation who had failed to reject the Workmen's Compensation Law and was subject thereto, and (c) that decedent was employed subject to the Law by Donald M. Shelley or Lucky Four, or both, is assigned as error.

██ Logging is classified as a hazardous occupation by the Act. § 102-1725, O. C. L. A. The hauling of logs is a logging operation. *Peterson v. State Industrial Accident Commission,* 140 Or. 326, 328, 12 P. 2d 564. We think there can be no question but that Shelley was engaged in logging. While it is true that at the exact time when decedent was killed Shelley did not actually know that he would put decedent to work for Lucky Four on the following Monday, nevertheless he did anticipate putting him to work hauling logs somewhere, if not for Lucky Four then for some other outfit. Log hauling was Shelley's occupation. Log hauling is

what logging trucks are made for, and, as a practical matter, is the only use to which they are adapted. Servicing, greasing and gassing logging trucks, involving the unloading and reloading of heavy trailers by power driven machinery, is an employment incidental to log hauling. Log hauling is a logging operation, and as such is a hazardous occupation under the Act. § 102-1712, O. C. L. A.; *McLean v. State Industrial Accident Commission,* 189 Or. 405, 221 P. 2d 566, 573; 2 Schneider, Workmen's Compensation, p. 359, § 396 (b). As Shelley did not reject the Act, he was subject to its provisions and bound to contribute to the industrial accident fund. § 102-1712, O. C. L. A. Decedent was entitled to the benefits of the Act. § 102-1754, O. C. L. A.; *Middlebusher v. State Industrial Accident Commission,* 147 Or. 459, 463, 34 P. 2d 325.

The decedent, in servicing the trucks, was working under the direct instructions of Shelley, his employer. Shelley anticipated being able to put the trucks to work hauling logs upon the Lucky Four job, or elsewhere, on the following Monday, and the servicing was done in preparation for such work and was a necessary part thereof. *McBride v. Preston Creamery Ass'n,* 228 Minn. 93, 36 N. W. 2d 404, 405.

We think it is clear that the servicing of the trucks was an essential feature of the work of log hauling. It was one of the ordinary risks of decedent's employment as a log hauler and incidental to such employment. *Brady v. Oregon Lumber Co.,* 117 Or. 188, 199, 243 P. 96, 45 A. L. R. 812; *Zelle v. Industrial Commission of Colorado,* 100 Colo. 116, 65 P. 2d 1429, 1430; *Young v. Goldsmit-Black, Inc.,* 102 Pa. Super. 291, 156 A. 571. In *Donahue v. Adams Transfer & Stor. Co.,* 230 Mo. App. 215, 88 S. W. 2d 432, 435, plaintiff was

required to do a large amount of hauling work for defendant. Defendant directed him to purchase a certain tractor and to have a trailer constructed for use in this work. Under the terms of his employment, plaintiff was required to keep his equipment in repair in order that he might respond to the call of his employer at any time. While on a trip from Indianapolis to Kansas City for his employer, the radiator of plaintiff's tractor began to leak. At Kansas City plaintiff, after he had unloaded his tractor, drove it, as was his custom, to his home, where he began to work repairing the radiator. He was unable to finish the work that day and resumed it the next morning. In the course of the work he opened a bottle of muriatic acid and some of the acid escaped into his eyes, as a consequence of which he lost the sight of one eye. Held, that plaintiff was engaged in the performance of the duties of his employment at the time of his injury; that he was in a place where his service required him to be; and that the accident arose out of and in the course of his employment.

■ The court's finding that decedent received no compensation from Shelley, or from anyone, for maintaining and servicing his truck, is contrary to the stipulated facts, by which it was agreed that decedent was compensated for minor repair work and servicing his truck and other work by payment to him of twenty per cent of the gross earnings of his truck. Respondent's argument to the contrary is based upon the theory that a workman is obliged to maintain his own special tools or clothing relating to his work or used in activity which reasonably may be related thereto. In this connection respondent cites *Stuhr v. State Industrial Accident Commission*, 186 Or. 629, 637, 208 P. 2d 450.

That case is not in point here, as Stuhr received his injury while engaged in the repair of a truck belonging to himself under circumstances in no way connected with the job upon which he was working. Respondent cites also *McPherson v. State Industrial Accident Commission,* 169 Or. 190, 127 P. 2d 344, wherein, respondent says, a workman died under the wheels of a logging truck "hauling for the workman's employer." The latter statement is incorrect. The plaintiff's decedent in that case was accidentally killed while engaged, outside of his working hours, in aiding other men to start a stalled truck, which was hauling logs under contract with other persons than decedent's employer. The court held that decedent was a mere volunteer, and that the accident did not arise out of and in the course of his employment. The case is of no value as authority in the case at bar.

Error is assigned upon the court's finding that decedent was not at the time of the accident on duty for Lucky Four or an employee of Donald M. Shelley, and in concluding that the accident did not happen during the course of his employment.

We have already determined that decedent was not in the employ of Lucky Four at the time of the accident. It was of course necessary for plaintiff to show that decedent, at such time, was engaged in or about his employer's business and was not doing something for his own benefit or accommodation. *Lamm v. Silver Falls Timber Co.,* 133 Or. 468, 480, 277 P. 91, 286 P. 527, 291 P. 375. We are of the opinion that the agreed facts show that the accident occurred at a place where it was reasonable for the decedent employee to be, and in fact where he had his employer's permission to be in the performance of the duties of his employment,

and while he was fulfilling those duties. *Brady v. Oregon Lumber Co.,* supra, 117 Or. 188, 198, 243 P. 96, 45 A. L. R. 812. Mr. Shelley was aware that the drivers had availed themselves of the opportunity which they had of using power machinery in unloading and reloading the trailers. We think that the work, as it was carried on, involved a risk reasonably incidental to the employment. *Larsen v. State Industrial Accident Commission,* 135 Or. 137, 140, 295 P. 195. The decedent was engaged in one of the duties which he was employed to perform. His injury was therefore received "in the course of" his employment. There was a causal connection between the conditions under which the work was performed and the resulting injury. Therefore, the injury arose "out of" the employment. *Larsen v. State Industrial Accident Commission,* supra, at p. 139; *Lamm v. Silver Falls Timber Co.,* supra, at pp. 480, 483.

 The fact that decedent and the other driver worked together in servicing their trucks, and that the accident happened while they were actually working upon the other driver's truck, is immaterial. They did the work in that manner with the knowledge of their employer. But even if they had not done so, we hold, interpreting the statute liberally as we are bound to do, that a workman, who suffers injury while rendering reasonably needed assistance to a fellow workman in furtherance of the employer's business, may properly be considered as having suffered injury arising out of and in the course of his employment. *Ramczik v. Winona Mach. & Foundry Co.,* 174 Minn. 156, 218 N. W. 545; 4 NACCA Law Journal 20.

Respondent suggests that it would be improper to relate the decedent's employment in servicing trucks

to an uncertain future employer. We think, however, that it is proper to relate such work to the general business of the employer, Shelley, which was log hauling, a hazardous occupation covered by the Act. In our opinion, the agreed facts did not sustain the court's finding that the work in which decedent was engaged at the time of the accident was for his own benefit and Shelley's, or its finding that Shelley was decedent's fellow servant.

This case was one involving unusual and somewhat difficult questions of interpretation of the law as applied to the agreed facts. It was largely a case of first impression for the Commission. In denying the claim, the Commission, of course, acted in good faith, and is entitled, at the very least, to the disputable presumption that its official duty in the premises was regularly performed. Counsel for appellant, however, in their brief, accuse the Commission of "having proceeded from one absurdity to another with callous indifference to the rights of the plaintiff and the benign purpose of the statute." The charge is entirely unjustified, and the Commission, with proper dignity but in unmistakable language, refuted it. We take note of it merely to give counsel to understand that abusive argument of this sort should not be indulged in before this court.

The judgment appealed from is reversed, with costs, and the cause is remanded with directions to enter a judgment ordering and directing the defendant Commission to award plaintiff compensation for the death of the decedent in the amount provided by law.