Argued December 5, reversed December 31, 1962

# WHITLOCK *v.* STATE INDUSTRIAL ACCIDENT COMMISSION
### 377 P. 2d 148

*James O. Goodwin,* Oregon City, argued the cause

for appellant. On the brief were Jack, Goodwin & Anicker, Oregon City.

*George S. Woodworth,* Assistant Attorney General, Portland, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Ray H. Lafky, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, O'CONNELL, LUSK and DENECKE, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Walter Whitlock, from a judgment which the circuit court entered in favor of the defendant, State Industrial Accident Commission, after sustaining a motion of the defendant for the entry of judgment in its favor as permitted by ORS 18.140 notwithstanding the jury's return of a verdict in the plaintiff's favor. The action was instituted by the plaintiff upon averments that while he was in the employ of Isham and Albertine West, contributors to the Workmen's Compensation Fund, he sustained an injury and was entitled to an award of compensation, but that the defendant rejected his claim. The jury's verdict found that the plaintiff, at the time of his injury, was an employee of the Wests who concededly were contributors to the fund, and the judgment that was entered upon the verdict referred the claim to the commission for allowance. That judgment was vacated by the one upon which this appeal is based.

The Wests, who the plaintiff alleges were his employers, owned an establishment located on the Mt.

Hood Loop Highway known as Summit House. It is patronized by skiers.

■ During the summer of 1961 the Wests decided that Summit House should be painted and inquired of Mr. Carl Stauffer, a teacher in Sandy High School and also the superviser of the school's chapter of Future Farmers of America, if his organization, hereafter called the chapter, would be interested in painting the house for $125. Mr. Stauffer, after consulting the boys of the chapter, deemed that painting the house would be a suitable fund raising activity and accepted the West's offer. Upon completion of the work $125 was paid to the chapter. While participating in the work of painting the house the plaintiff sustained lead poisoning and, through the institution of this proceeding, sought compensation for the disability that he thereby suffered.

The question presented by this appeal is whether the plaintiff qualifies as an employee under the Workmen's Compensation Act and is thus entitled to benefits thereunder.

ORS 656.002 (16) provides:

> " 'Workman' means any person who engages to furnish his services for a remuneration, subject to the direction and control of an employer * * *."

It is thus seen that two conditions must be met before an individual may be deemed a "workman" under the statute. First, he must be subject to the control of an employer, and second, he must obtain some form of remuneration for his efforts. It follows that if he is to prevail under the facts before us the plaintiff must show that the Wests were his employers and that he was under their supervision and control when the injury occurred.

ORS 656.002 (5) states:

> " 'Employer' means any person &ast; &ast; &ast; who contracts to pay a remuneration for and secures the right to direct and control the services of any person."

It is undisputed that the Wests contracted with Mr. Stauffer to pay remuneration for the services which were rendered by the chapter. A reading of the record reveals that the Wests had the right to direct and control the manner in which the services were rendered. The Wests were therefore "an employer" under the statutory definition which we quoted.

◾ In discussing the element of control and supervision, *Landberg v. State Industrial Accident Commission,* 107 Or 498, 502, 215 P 594 (1923), says:

> "&ast; &ast; &ast; The services which the servant contracts to perform are personal services, and the master must have the right to direct and control the details of the work and the manner and mode of its performance. &ast; &ast; &ast;"

It is not necessary that the person having the right to control exercise that right in every particular of the project at hand. It is sufficient that he possess the right. Regarding her supervision of the work, Mrs. West testified as follows:

> "Q Was it substantially correct, that he [Mr. Stauffer] supervised the activities of the boys while they were on the job?
>
> "A I helped supervise while they were on the job, too, I will assure you."

It appears from the record that Mrs. West in no way relinquished her right to supervise and control the details of the work. Her emphatic testimony that she was there while the work was in progress, and that

she supervised the activities is undisputed. The considerable freedom which she allowed the boys in their choice of jobs and in the amount of time they spent on the job does not refute this testimony. It appears from the foregoing that the plaintiff was subject to the supervision and control of the Wests at the time the accidental injury occurred.

It remains to be seen whether the plaintiff's services were performed for remuneration. 1 Larson, Workmen's Compensation Law, Sec. 47.43(a), p. 702, states that "the payment need not necessarily be made to the employee." In the case of *Sister Odelia v. Church of St. Andrew,* 195 Minn 357, 263 NW 111 (1935), a nun who was a teacher in a parochial school could receive no wages because she had taken a vow of poverty. The Church of St. Andrew, which operated the school in which she taught, paid consideration for her services directly to her religious order. She was injured during her employment. In holding that Sister Odelia was an employee, the court said:

"* * * It is true that she turned over the surplus of her earnings to her own order, but that fact is of no consequence as a defense. She might have assigned all her earnings without effect on her relationship to the church. She is in a position much like that of an unemancipated minor whose parent puts him out for hire and is entitled to his wages. Certainly he and not the parent is the employe. * * * Wages were paid directly for her services, not to her but to her order, to which she in effect had assigned them."

That reasoning applies to the case at bar. Plaintiff performed a part of the work for which the Wests had contracted. His labor was paid for by the Wests who were, for the purposes of this activity, his employers.

The fact that the money for which he worked was not paid to him directly but to an organization of which he was a member does not alter this relationship. It was his prerogative to assign his share of the proceeds to whomever he wished. The fact is that money was paid for his services. This places him squarely within the definition of a "workman" which is set forth in ORS 656.002 (16).

Defendants urge that the case of *Smith v. State Industrial Accident Commission,* 144 Or 480, 23 P2d 904, 25 P2d 1119, controls the disposition of the case before us. The clearest distinction between that case and the one at bar is that in the former remuneration was neither expected nor given for the plaintiff's services. Since that statutory condition was absent, the plaintiff was clearly outside the purview of the Workmen's Compensation Act. We have shown that this condition was met in the case before us.

We conclude that the plaintiff was an employee of the Wests at the time of the accidental injury and that he therefore is entitled to benefits under the Workmen's Compensation Act. The judgment of the circuit court is reversed with instructions to reinstate the verdict and enter judgment thereon.

Lusk, J., dissents.