Argued and submitted January 30, affirmed May 27, reconsideration denied August 7, petition for review allowed October 14, 1980

# ROBINSON,
*Appellant,*

*v.*

# OMARK INDUSTRIES, INC., et al,
*Respondent,*

## (No. A7710 -14624, CA 14037)

611 P2d 665

Robert K. Udziela, Portland, argued the cause for appellant. With him on the briefs was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Elizabeth K. Reeve, Portland, argued the cause for respondent. With her on the brief were Ridgway K. Foley, Jr., Souther, Spaulding, Kinsey, Williamson & Schwabe, Donald Joe Willis, Michael D. Hoffman and Steven H. Pratt, Portland.

Before Schwab, Chief Judge, and Thornton and Campbell, Judges.

SCHWAB, C. J.

Thornton, J., dissenting opinion.

**SCHWAB, C. J.**

Plaintiff sued defendant, Omark Industries, for injuries he suffered while working on Omark's premises. Defendant alleged that workers' compensation was plaintiff's sole remedy and that it was therefore immune from tort liability. As contemplated by ORS 656.384(2), the trial court first tried and determined that defense, ruling in defendant's favor. Plaintiff appeals. We affirm.

The facts are unique in Oregon appellate decisions, although probably common in some industrial and business settings. Plaintiff was employed by Employers' Overload (EO), a "labor broker" or temporary help service which supplies other companies with temporary workers. EO is paid an hourly rate by its customer for the time EO's employes work for the customer. EO in turn pays its employes directly, performs all payroll accounting and provides workers' compensation coverage for its employes.

Omark requested EO to supply temporary workers to "pick up the production demand." EO sent plaintiff to Omark's premises. While there, in the course of cleaning a blister pack (plastic sealing) machine, plaintiff injured his hand. Plaintiff received workers' compensation benefits from EO's insurer for this injury.

Whether plaintiff can now sue defendant for negligence alleged to have caused the same injury depends upon whether plaintiff and defendant had an employer-employe relationship and whether defendant was complying with the Workers' Compensation Law. If both of those questions are answered in the affirmative, plaintiff cannot maintain this action against defendant. ORS 656.018.

The employer-employe relationship issue is determined by a two-pronged test: compensation plus right of control. ORS 656.005(16), 656.005(31). The compensation prong is controlled by *Whitlock v. State Ind. Acc.*

*Com.,* 233 Or 166, 377 P2d 148 (1962). *Whitlock* involved a workers' compensation claim. The claimant and other members of a noncommercial organization had painted a house in return for a fee paid to the organization. The claimant had been injured while painting. The Supreme Court held that the claimant was an employe for workers' compensation purposes, holding that the fee paid to the organization satisfied the compensation requirement.

By analogy, in the present case, defendant paid compensation to plaintiff through the conduit of EO. *Whitlock* may well have been a case in which the court was straining to find workers' compensation coverage — the flip side of which is to bar tort liability. But *Whitlock* is binding on us and, in any event, the present facts more strongly support a finding of compensation than did the facts in *Whitlock* — here plaintiff actually received money paid for his services, while the claimant in *Whitlock* did not actually receive money paid for his services.

A preliminary aspect of the right-of-control issue is whether such a right must necessarily be exclusive. At times plaintiff seems to argue that if he establishes that EO had any right to control any aspect of his work, that would defeat defendant's right of control — as if right of control were mutually exclusive. We conclude that plaintiff's apparent premise is incorrect. An employe can have more than one employer for workers' compensation purposes. *Brazeale v. State Ind. Acc. Comm.,* 190 Or 565, 576, 227 P2d 804 (1951); *Oremus v. Oregonian Pub. Co.,* 3 Or App 92, 470 P2d 162, *rev den* (1970). It follows that an employe can be subject to the right of control by more than one employer.

That is exactly what the present facts reveal. EO had the right to control plaintiff to the extent that it directed him *to report to* defendant's premises. While plaintiff was on defendant's premises, defendant had the right to control all aspects of plaintiff's work.

[266]

Defendant in fact controlled plaintiff's work with respect to hours, breaks, physical placement within the plant and specific assignment of tasks. We conclude that defendant had the right to control plaintiff's work and therefore was his employer for workers' compensation purposes.

Plaintiff presses only one argument for a contrary conclusion. Plaintiff alleges that the contract between EO and defendant prohibited defendant from assigning him to work on machinery without EO's prior approval. It follows, plaintiff reasons, that EO retained the ultimate right of control over the activity that actually led to his injury.

The first flaw is factual. The terms of the contract between EO and defendant pursuant to which EO supplied defendant with temporary workers is a question of fact. There was no written master contract between EO and defendant. One exhibit is the time cards used as the basis upon which EO's customers pay EO for temporary help and EO in turn pays its employes. It has a printed passage on the back that states:

> "It is agreed by the customer that EO employees are not authorized to operate machinery, automotive or truck equipment without first obtaining written approval from EO, unless the EO employee is specifically assigned for said purposes."

Another exhibit is a plan prepared specifically for defendant by EO in which EO gives defendant the following "helpful hint":

> "Before the EO Temp reports, to avoid delay, assign one of your employees to have the work ready, the machines in good working order, the necessary supplies handy, and instructions available."

The rest of the evidence about the contractual arrangement between EO and defendant was presented by testimony. EO's manager testified that it was EO's "policy" that their employes were not supposed to operate machinery on a customer's premises.

The manager never clearly stated whether, when or to what extent this "policy" was communicated to defendant before plaintiff's injury.

We do not determine the facts in this type of case. *Cornelison v. Seabold,* 254 Or 401, 408-09, 460 P2d 1009 (1969). The question before us is whether the above evidence establishes as a matter of law that there was a mutually agreed upon contractual limitation prohibiting defendant from assigning employes to operate machinery. Contrary to the apparent conclusion of the dissent, we find the evidence too inconclusive to so hold.

The second flaw in plaintiff's position is legal. Even assuming *arguendo* that EO reserved the sole right to control whether its employes operated machinery, all this establishes is the point we have already noted — that both EO and defendant controlled various aspects of plaintiff's work. That does not establish that either was plaintiff's only employer; it establishes that both were plaintiff's employers. Moreover, in a dual-employer situation, we decline plaintiff's invitation to refine analysis to the point of attempting to ascertain which employer had the right to control the actual injury-causing activity. It is difficult enough to determine, for example, whether work caused a heart attack; it could be impossible to determine which of two employers controlled the activity that caused a heart attack.

The remaining issue is whether defendant was a "complying employer," which is necessary under the Workers' Compensation Law in order for defendant to have tort immunity. We confront a statutory hiatus on this issue. To be a complying employer, ORS 656.017 requires an employer to be self-insured or to obtain insurance. Although defendant maintained insurance for its regular employes, it did not do so for its temporary workers like plaintiff. Instead, defendant paid a fee to EO for plaintiff's services that was known to all

[268]

to be calculated to include workers' compensation protection for plaintiff that EO actually maintained. Had the legislature considered this dual-employer arrangement, we are confident it would have provided that both employers have tort immunity if either is a complying employer. *Cf. State v. Rafal,* 21 Or App 114, 117, 533 P2d 1397 (1975). After all, the purpose of the law is to promote workers' compensation coverage, not to create technicalities that permit a person in plaintiff's position to obtain a workers' compensation award from one of his employers and a tort judgment from another of his employers for the same injury.

Affirmed.

**THORNTON, J.,** dissenting.

I agree with the majority that Robinson was an "employe" of Omark for purposes of Workers' Compensation. I further agree that an employer may discharge its obligation to provide compensation coverage, and thereby become an exempt employer (ORS 656.018), by contracting with a labor broker that supplies such coverage. I part company with the majority, however, on its treatment of the Employers' Overload (EO) "policy" of not permitting its workers to be assigned to machinery or motor vehicles without prior authorization (which I perceive to be a contractual condition). I further disagree that an employer that is relying for its exemption on coverage furnished by a labor broker may ignore conditions placed by the broker on the scope of work its employes may perform which are clearly aimed at promoting safety and minimizing the compensable injuries which form the basis of its insurance premiums.

The restriction in question appears on the back of time cards which EO employes take to the job and which are signed by the employer. These cards state above the signature line:

"Your signature certifies approval of above hours and acceptance of terms and conditions on reverse side."

These time cards are the basis on which EO's employes are paid and for charging EO's clients. They had been used by the parties for several years and Omark's representative testified he was familiar with the conditions stated thereon.

At the hearing, Omark did not deny that the restriction was part of the contract between Omark and EO, but, rather, directed its evidence at showing a waiver of another term on the back of the card (prohibiting a client from hiring an EO employe earlier than 90 days after that employe first came to work for the client). EO's representative testified that that particular provision had been waived in Omark's case. She further testified that the work restriction had not been waived, although there had never been any occasion for dispute between EO and Omark. She stated that EO attempted to match its employes to job requirements and that, had she been aware that Robinson had been assigned to a machine, she would have objected. Omark offered *no* evidence, although it clearly could have, that it had assigned EO employes to machinery in the past, with or without EO's knowledge.

The majority concludes that the trial court must have found as a fact (although the trial court made only a finding that Omark was a "special employer") that the restriction was not a part of any contract. Under the any-evidence test which comprises our standard of review, *Cornelison v. Seabold,* 254 Or 401, 460 P2d 1009 (1969), we are bound by this "finding" if there is any evidence to support it. I believe there is none.

The time card is the memorandum which fixes the parties' obligations to pay. This is a contract. In fact, it is the same contract upon which the majority relies to satisfy the first prong of ORS 656.005(16) (defining

"employer"). If Omark is not an employer of plaintiff, it is not exempt from suit. ORS 656.018(1)(a). There was no evidence of waiver here. The "helpful hint" to which the majority refers is contained in a brochure comprised entirely of forms which are undoubtedly sent to clients besides Omark and which describe generally the type of services EO provides. The fact that the "helpful hint" contemplates a situation in which EO, having received notice that the person it assigns is to operate a machine, might authorize such work can in no way support a finding that the restriction was waived or that, in this instance, as the majority characterizes it, it was a "policy" which hadn't been effectively brought home to Omark.

I agree with the majority that it would be pointless in cases such as this to attempt to determine which employer had the right to direct the injury-causing aspect of a claimant's employment. Right of control is a question of fact and a contractual restriction is only one factor to be considered. I disagree, however, that the restriction at issue here has no effect on whether Omark is a complying employer. In my view, the condition limits the situation in which EO agrees to provide compensation coverage on its employes. If Omark, as it did here, oversteps the bounds of that agreement, it can no longer rely on EO to provide coverage.

This case is admittedly a difficult one on its facts, because the plaintiff received compensation and EO is not a party to this suit. As the majority summarizes:

"* * * After all, the purpose of the law is to promote workers' compensation coverage, not to create technicalities that permit a person in plaintiff's position to obtain a workers' compensation award from one of his employers and a tort judgment from another of his employers for the same injury." 46 Or App at 269.

The fact that a worker has received compensation does not of itself bar a tort action against a third party. *See Virgil v. Walker,* 280 Or 607, 611, 572 P2d 314

(1977). Moreover, in situations legally indistinguishable from the present facts, the rule set forth by the majority could produce a less palatable result. If, for example, plaintiff had been critically injured while operating a fork lift or a "Kelly girl" had been injured while assigned to a punch press, it is likely, in my opinion, that the labor broker's insurance carrier would deny the claim, relying on the contract restriction. (The claim could arguably have been denied here.) In such a case, assuming the denial was well-founded, neither employer would be in compliance and *both* would be subject to suit, even though the labor broker had no knowledge that its employe was assigned a more hazardous task than it had contemplated when it secured insurance coverage.

The alternative for a labor broker under the majority's holding is to insure all its employes against all risks. It apparently cannot limit its exposure by means of contractual restrictions on the type of work its employes may be assigned. The labor broker would be relegated to an action for breach of contract against its clients with the attendant problem of showing to what extent a particular injury caused an increase in its insurance premiums and the duration of that increase.

In my view, the more sensible rule would be to hold that Omark was a complying employer for workers' compensation purposes so long as it complied with the restrictions in the contract. Omark could have obtained a waiver of the restriction here or requested EO to send an employe who was authorized to operate machinery. I would hold that Omark, in breaching the condition of the contract, lost its right to rely on the coverage provided by EO under the same contract, and is therefore subject to suit.

For the foregoing reasons, I respectfully dissent.